EL PUEBLO DE PUERTO RICO, peticionario, *v.* JOSÉ ALFONSO LEBRÓN c/p JOHN RUIZ LEBRÓN, acusado y recurrido.

*Número:* O-81-18     *Resuelto:* 29 de junio de 1981

*Héctor A. Colón Cruz, Procurador General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados del peticionario; *Israel Roldán González,* abogado del recurrido.

El Juez Asociado Señor Díaz Cruz emitió la opinión del Tribunal.

El caso seguido contra el recurrido Ruiz Lebrón por delito de apropiación ilegal agravada se llamó para juicio ante la Sala de Aguadilla del Tribunal Superior el 2 junio, 1980, sin que comparecieran ni el acusado ni su abogado. Había en el expediente una moción de suspensión suscrita por el defensor que el tribunal estimó, haciendo un nuevo señalamiento para 21 agosto, 1980 mas informado por el fiscal de que para la nueva fecha ya no estaría en Puerto Rico el contador Gregorio P. Narvasa, de la firma Peat Marwick Mitchell & Co., testigo esencial de cargo, el juez ordenó que se le tomara deposición el 12 junio, 1980 en presencia del acusado y su abogado. La minuta de ese día 12 informa que se tomó la deposición en el tribunal, en cuyo acto participó el abogado Sr. Medina en representación del acusado. El juicio empezó el 2 diciembre, 1980 y la defensa objetó la presentación al jurado de la grabación del testimonio de Narvasa, obtenido en la deposición. El tribunal sostuvo la objeción de la defensa, y al recurrir el Estado expedimos *certiorari* el 9 febrero, 1981.

Tanto el acusado recurrido como el ilustrado juez superior fundamentan el criterio de exclusión de la deposición tomada al contable Narvasa en dos planteamientos: (a) que las Reglas de Procedimiento Criminal no permiten ese recurso al fiscal; y (b) que la presencia física del acusado en la toma de deposición es parte de su derecho constitucional "a carearse con los testigos de cargo" (Constitución E.L.A., Art. II, Sec. 11), vulnerado en este caso por la ausencia del acusado de dicho acto.

—A—

■ El desbalance que en el Procedimiento Criminal señala el apelado al autorizar la Regla 94 ([1]) el remedio de deposición en caso de necesidad únicamente para la defensa, no derrota la justicia. Dicha Regla 94 corresponde a la federal Núm. 15 enmendada desde el 1975 para extender al Gobierno el derecho a tomar deposiciones, predicado el avanzado texto, como el nuestro en circunstancias excepcionales que afectan el mejor interés de la justicia. ([2]) 1 Wright, *Federal Practice and Procedure*, Sec. 241, Supto. 1978. En Puerto Rico, a falta de la enmienda habilitadora del Procedimiento Criminal, hay remedio en las Reglas de Evidencia cuyas normas de prueba de referencia admisible por excepción han servido para implementar el fundamental derecho del acusado a la confrontación. ([3]) Creado el remedio originalmente para la defensa, un enjuiciamiento racional debe proveer una correlativa autoridad al Estado en condiciones de necesidad, pues la

---

([1]) "REGLA 94. DEPOSICIONES

(a) Fundamentos; testigo bajo arresto. Si se demostrare que un testigo se encuentra en condiciones de no poder asistir o que se le ha impedido asistir al juicio o a cualquier vista, que su testimonio es esencial y que es necesario tomarle su deposición para evitar un fracaso de la justicia, el tribunal, en cualquier tiempo después de la presentación de la acusación o denuncia podrá, a moción del acusado notificada a todas las partes, ordenar que el testimonio de dicho testigo se tome por deposición y que cualesquiera libros, papeles, documentos u objetos no privilegiados que se designen en dicha moción se presenten en el momento y lugar en que deba tomarse la deposición. Si se arrestare a un testigo por no haber prestado fianza para comparecer a un juicio o a una vista, el tribunal, a solicitud escrita del testigo arrestado notificada a las partes, podrá ordenar que se tome su deposición. Después de suscrita la deposición el tribunal podrá despachar al testigo."

([2]) Reza la introducción a la Regla 15 federal:

*RULE 15. DEPOSITIONS*

". . . Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a *party* be taken and preserved for use at trial, the court may upon motion of such *party* and notice to the parties order that testimony of such witness be taken by deposition. . . ." (Énfasis nuestro.)

([3]) 5 Wigmore, *Evidence* § 1398, pág. 190 (Chadbourn rev. 1974).

gestión del fiscal para que el crimen no quede impune es parte de la misma justicia cuyo fracaso nadie quiere y que el tribunal está llamado a vindicar.

■ La vigente Regla 64 de Evidencia declara admisible, como excepción a la regla de prueba de referencia, cuando el declarante no está disponible(4) para testificar en juicio, la deposición tomada, si es ofrecida contra una persona que tuvo la oportunidad de contrainterrogar.

■ La garantía constitucional del derecho de confrontación no veda las excepciones a la prueba de referencia establecidas en las Reglas de Evidencia de las cuales son ejemplo clásico la declaración del moribundo (*dying declaration*) y el testimonio prestado en el juicio anterior por un testigo subsiguientemente fallecido. *Dutton* v. *Evans*, 400 U.S. 74, 80 (1970). En *Dutton*, hubo negación substancial del derecho a confrontación del acusado Evans al admitirse en evidencia en un caso de pena capital, el testimonio de un preso de apellido Shaw, compañero de celda del co-acusado Williams, en que relata que de regreso éste a la cárcel luego del acto de lectura de la acusación, el testigo le preguntó cómo había salido en la corte y que el acusado Williams contestó, "Si no fuera por el sucio hijo de perra Alex Evans, no estaríamos metidos en esto ahora". Pág. 77. Surge la cuestión de confrontación porque inducía al jurado a inferir que el co-acusado Williams había señalado a Evans como autor del asesinato pues culpaba a Evans por su difícil situación. No obstante, el Supremo federal encontró en dicho testimonio signos de confiabilidad (*indicia of reliability*) determinantes de que propiamente puede someterse al jurado aunque no haya habido confrontación

---

(4) Regla 64 de Evidencia

"(A) Definición. No disponible como testigo incluye situaciones en que el declarante:

.    .    .    .    .    .    .    .

(5) está ausente de la vista y el proponente de su declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal."

con el declarante Williams. "Las decisiones del [Tribunal Supremo de Estados Unidos] han sentado con claridad que el propósito de la Cláusula de Confrontación es propiciar una preocupación práctica por la corrección del proceso determinante de la verdad en los juicios criminales y asegurar que 'el juzgador de hechos [tenga] una base satisfactoria para evaluar la veracidad del testimonio anterior'." *Dutton*, supra, pág. 89.

Comparado con *Dutton*, el perjuicio que a su derecho de confrontación alega el recurrido en el presente caso es levísimo. Su alegación nace con cuestionable mérito, considerando que fue su moción de suspensión del juicio lo que impidió al testigo contable Narvasa testificar en corte abierta, y lo que obligó al fiscal a recurrir al medio excepcional de la deposición en vista de que en la nueva fecha de juicio el testigo ya habría abandonado a Puerto Rico y el Estado se quedaría sin prueba. Mas este acusado tuvo una plena oportunidad de repreguntar en el acto de toma de deposición, y su abogado presente hizo uso irrestricto de ese derecho y de tal modo quedó cumplida la garantía constitucional de confrontación. En *Pueblo* v. *Vargas*, 74 D.P.R. 144, 149 (1952), este Tribunal adoptó el criterio de Wigmore que identifica la confrontación con la oportunidad de contrainterrogar y que considera secundaria y prescindible la "mínima ventaja" que para el acusado representa la observación por el tribunal del comportamiento del testigo en la silla testifical. 5 Wigmore, *Evidence* § 1365, pág. 28 (Chadbourn rev. 1974). Después de *Vargas*, supra, Wigmore ha reafirmado esa posición, especialmente en lo que respecta a prescindir por razón de *necesidad* de la llamada *evidencia de comportamiento* (*demeanor-evidence*), y citamos:

*Sec. 1396. Presencia del testigo ante el tribunal puede dispensarse si no está disponible.*

Finalmente la cuestión sobre el derecho de confrontación con los testigos contrarios se reduce esencialmente a si hay

un derecho a contrainterrogar. Si ha habido contrainterrogatorio, ha habido confrontación. La observancia del derecho a contrainterrogar . . . dispone de cualquier objeción basada en el referido derecho de confrontación.

Sin embargo, la ventaja secundaria que incidentalmente provee al tribunal la presencia del testigo —la evidencia de comportamiento— es elemento sobre el que debe insistirse siempre que pueda conseguirse. Nadie duda que es altamente deseable, siempre que esté disponible. Pero es meramente deseable. Cuando no está disponible, toda exigencia desaparece. No es parte esencial del concepto de confrontación; no descansa en mejor base que otra evidencia a la que se atribuye especial valor; y así como el original de un documento o un testigo preferido pueden dispensarse en caso de indisponibilidad, también *puede prescindirse de la evidencia de comportamiento de ser necesario.* Por lo tanto, en el supuesto que el requisito indispensable de contrainterrogatorio se haya cumplido, lo que resta por inquirir es si la evidencia de comportamiento, derivada de la presentación del testigo ante el tribunal, está disponible.[5] (Énfasis en el original.)

## —B—

La ausencia física del acusado del acto de deposición ha sido invocada fuera de toda proporción. Parte de las circunstancias excepcionales que en el presente caso justifican la necesidad de obtener evidencia fuera del juicio son: que el día en que se llamó el caso por primera vez para juicio, el testigo Narvasa compareció al tribunal, enteramente disponible para ambas partes y que la causa directa de que no se entrara a juicio estuvo en la moción de suspensión presentada por el acusado; que éste no se presentó a juicio ese día aparentemente descansando en que se decretaría la suspensión, hábito que todavía grava el enjuiciamiento criminal; que el juez señaló la deposición para diez días después, el 12 junio, 1980 y el abogado del acusado entró a la misma sin traer a su representado, sin levantar objeción alguna ni mucho menos plantear que en.

---

[5] Wigmore, *op. cit.*, págs. 154–155.

el contrainterrogatorio necesitaba de la presencia de su cliente; y que no se ha alegado ni demostrado que la ausencia física del acusado perjudicara en forma alguna la confrontación entre defensor y testigo. El derecho de confrontación fue cumplido en su integridad. Si algún derecho tuviere el acusado a un careo personal y directo con el testigo tanto su conducta negándose a comparecer a juicio, como su moción de suspensión del mismo impiden que pueda ahora aprovecharse de la anomalía procesal por él provocada. Hay amplio indicio de renuncia a estar presente, como lo hay en el abogado que participó sin objeción alguna en el acto de deposición, sin la presencia del acusado. Hubo una patente renuncia a tal presencia dentro de la significativamente mayor facultad del defensor a renunciar el derecho a carearse con los testigos de cargo sin consultar con el acusado. *Pueblo* v. *Figueroa,* 77 D.P.R. 188, 205 (1954).

La confrontación que garantizan la Sexta Enmienda y el Art. II, Sec. 11 de nuestra Constitución se cumple con la oportunidad de contrainterrogar, sin que sea indispensable la presencia del acusado. No está irremisiblemente atada al encuentro físico, al enfrentamiento nariz con nariz entre testigo y acusado, que en términos de depuración del testimonio no es ni sombra del eficaz escrutinio, del potencial de descubrimiento de la verdad que es el objetivo constitucional y esencia del contrainterrogatorio formulado por el abogado defensor. "El principal y esencial propósito de la confrontación es *asegurar al oponente la oportunidad de contrainterrogar.* El adversario exige confrontación, no con el vano propósito de mirar el testigo, o para que éste los mire a él, sino con el propósito de contrainterrogatorio que sólo se logra mediante la directa formulación de preguntas y la obtención de respuestas inmediatas." (Énfasis del autor.) 5 Wigmore, *op. cit.,* pág. 150. El careo en silencio con los testigos de cargo sería un gesto simbólico y el Derecho no se nutre con ritos.

Sobre este extremo dice McCormick: "Lo que importa . . . es el requisito de que la parte contra quien se ofrece el anterior testimonio . . . debe tener una razonable oportunidad de *contrainterrogar*. Esta requiere que el acusado o su abogado debe haber estado presente en la vista anterior, o debe haber tenido adecuado aviso y oportunidad para comparecer. El contrainterrogatorio en sí, naturalmente, no es esencial si la oportunidad fue ofrecida y renunciada." (Énfasis nuestro.) McCormick, *Law of Evidence*, St. Paul, Minnesota, West Publishing Co., 1954, pág. 482. Veinte años después Wigmore se expresa sobre la presencia o ausencia del acusado en el acto de confrontación, así: "La *ausencia de la propia parte del tribunal* durante el contrainterrogatorio, difícilmente puede perjudicar su oportunidad de contrainterrogar; toda vez que su comparecencia mediante abogado obtiene para él todo beneficio del derecho." (Énfasis en el original.) Wigmore, *op. cit.*, pág. 146. Así reducida la presencia física del acusado a elemento *secundario* del derecho de confrontación, y siendo ésta renunciable en su totalidad, es superfluo todo debate respecto a la ausencia física del aquí recurrido del acto de toma de deposición, al que se allanó el abogado desde un principio pues de otro modo no hubiese obtenido la suspensión del juicio, y al que prefirió ir sin la compañía del acusado en ejercicio del sano juicio del defensor y dentro de la facultad reservada al abogado, como técnico conocedor del Derecho, de tomar las decisiones que mejor sirven el interés de su cliente. La explícita conducta del abogado destaca con relieve inconfundible la renuncia del acusado de cualquier derecho, llámese secundario o de cualquier otro modo, a una confrontación ocular con el testigo.

▪ El derecho a estar presente durante el contrainterrogatorio es renunciable. De mayor consecuencia es la renuncia a estar presente en el juicio y sin embargo se toma como tal si al comenzar el juicio, el acusado informado de los cargos en su contra por haber asistido al acto

de lectura de la acusación, no comparece al tribunal. *Pueblo* v. *Bussman*, 108 D.P.R. 444 (1979).

■ La renuncia del derecho de confrontación no exige una forma o método particular. "El derecho a confrontar los testigos es un privilegio personal, que al igual que cualquier otro derecho constitucional, puede renunciarse por el acusado. Desde luego que la renuncia ha de ser voluntaria y con conocimiento del derecho que se renuncia, pero puede realizarse en cualquiera de las formas convencionales, como consentimiento expreso, omisión de reclamar el derecho a tiempo, o por conducta inconsistente con el propósito de insistir en el mismo." 2 Jones, *Evidence*, Cap. 6, Sec. 6:42, pág. 77 (6ta ed., 1972). "[E]l uso de este tipo de evidencia extrajudicial contra el acusado plantea una cuestión tan técnica y compleja bajo la Cláusula de Confrontación que la decisión del abogado defensor debe por lo regular obligar a su cliente. En otras palabras, es justo considerar como renuncia, una *estipulación para la toma de dicho testimonio*, o la falta de objeción cuando se ofrece." 4 Louisell & Mueller, *Federal Evidence*, Sec. 418, pág. 166 (1980). (Énfasis nuestro.)

Desde el año 1954 McCormick favorecía el uso por el fiscal de la deposición o testimonio anterior cuando no estuviere disponible el testigo, pero tenía reservas en cuanto a su admisibilidad por falta del estatuto habilitador. Se expresaba así:

Una vez que las cortes han permitido el uso por el Estado de testimonio en vista preliminar o en un juicio anterior, no hay principio bajo el cual pueda excluirse la toma y uso de una deposición por el Estado. Pero la ausencia de estatuto habilitador en la mayoría de los estados es fuente de duda, y suficiente obstáculo. La necesidad de tal estatuto para evitar el *fracaso de la justicia* (*flouting of justice*) ha sido señalada por el American Law Institute y desde el año 1944 por un eminente comité asesor designado por el Tribunal Supremo de los Estados Unidos. McCormick, *op. cit.*, págs. 485–486. (Énfasis nuestro.)

En el último cuarto de siglo surgieron con profusión los estatutos habilitadores en Reglas de Procedimiento Criminal y de Evidencia que allanaron el camino hacia una mejor justicia. En la jurisdicción federal se aprobó la Regla 15 de Procedimiento Criminal, enmendada en 1975 para equiparar los medios del Estado con los del acusado en lo que concierne a la admisión de deposiciones; y tanto en dicha jurisdicción como en Puerto Rico se han adoptado nuevas Reglas de Evidencia, entre ellas la 64, dirigidas a proteger la recta acción de la justicia de eventos frustrantes como la muerte, impedimento, pérdida real o fingida de la memoria, retractación o simple negativa a declarar, y ausencia del testigo el día de la vista.

Mas toda preocupación constitucional con el recurso a la Regla 64(B)(1) de Evidencia [6] encuentra final reposo en la última opinión del Tribunal Supremo de los Estados Unidos que es *Ohio* v. *Roberts*, 448 U.S. 56 (1980), [7] en cuyo juicio se admitió en evidencia, en ausencia de la deponente, la transcripción del testimonio en vista preliminar, en la que *no hubo contrainterrogatorio formal por la defensa,* de la única testigo de cargo para probar los de falsificación, recibo de propiedad hurtada y posesión de heroína. A modo de introducción, ratifica el principio ya anunciado en *Mattox* v. *United States*, 156 U.S. 237 (1895), de que la regla general de confrontación en el juicio, con todo su efecto benéfico y su valor para el acusado, debe

---

[6] Regla 64 de Evidencia

"(B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

"(1) *Testmonio anterior:* Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista."

[7] *Ohio* v. *Roberts* distingue, al colocar en correcta perspectiva de *hechos* las anteriores decisiones de *Barber* v. *Page*, 390 U.S. 719, 722–725 (1968); y *California* v. *Green*, 399 U.S. 149 (1970).

ocasionalmente ceder a consideraciones de política pública y las necesidades del caso, porque en toda jurisdicción hay un marcado interés en la ejecución efectiva de la ley, y en el desarrollo y formulación precisa de las *reglas de evidencia* aplicables en procedimientos criminales, que deben responder a "condiciones cambiantes". Ausente del juicio la testigo, que a diferencia del caso que nos ocupa no fue sometida al contrainterrogatorio "clásico", el Supremo federal en *Roberts*, a la pág. 73, le reconoce confiabilidad a su testimonio y confirma la norma de *California* v. *Green*, 399 U.S. 149 (1970), que resume así: "Toda vez que hubo una adecuada *oportunidad* para contrainterrogar [al testigo] y la defensa . . . aprovechó esa oportunidad, la transcripción . . . presenta suficiente indicio de confiabilidad (*indicia of reliability*) y ofrece ' "al juzgador de hechos una base satisfactoria para evaluar la veracidad de la declaración anterior" '." (Énfasis nuestro.)

▇▇ Junto a la confiabilidad, el otro requisito para admisión del testimonio en ausencia del declarante es su condición de indisponibilidad, la que no satisface la exigencia constitucional de confrontación "a menos que el Ministerio Público haya realizado un *esfuerzo de buena fe* para conseguir su presencia en el juicio". (Énfasis en el texto.) *Barber* v. *Page*, 390 U.S. 719, 724–725 (1968); *Ohio* v. *Roberts*, supra. En el presente caso la indisponibilidad del testigo Narvasa, creada por la suspensión del caso, es hecho admitido, pues el conocimiento por la defensa de que dicho testigo abandonaría a Puerto Rico y no estaría disponible en el juicio, fue factor determinante de su voluntaria participación en la toma de deposición.

Los hechos de este caso en que la defensa suspende el juicio, consciente de que el testigo, presente el día de la suspensión, no estará disponible para futuros señalamientos, y de que su testimonio es esencial para probar la acusación; y la participación del abogado en la toma de deposición, sin objeción ni reserva, en la que se valió de todos

los recursos del contrainterrogatorio, para más tarde en el juicio impugnar el testimonio que con su conducta afirmativa había dotado de todos los requisitos de admisibilidad; la ausencia de mérito en su reclamo aun en detalles que Wigmore llama secundarios o subordinados en la invocación de derechos constitucionales, actualiza la advertencia del Juez Cardozo en *Snyder* v. *Massachusetts*, 291 U.S. 97, 122 (1934), (citado en *Dutton*, ante):

> Hay un peligro de que el Derecho penal sea llevado al desprecio —que el descrédito llegue a tocar las grandes inmunidades que garantiza la Decimocuarta Enmienda— si se permite que tenues posibilidades de perjuicio al acusado anulen la sentencia dictada por un tribunal con jurisdicción en acatamiento de la ley local, y pongan en libertad al culpable.

Aun cuando no mediara la renuncia efectiva por el recurrido de su derecho a confrontación, aparecen cumplidos a plenitud los requisitos de no-disponibilidad del testigo y confiabilidad de la deposición, por lo que ésta es admisible en el juicio.

*Con estos antecedentes y fundamentos, la resolución recurrida del Tribunal Superior, Sala de Aguadilla, será anulada, y el caso devuelto a instancia para continuación del juicio y procedimientos compatibles con esta opinión.*

El Juez Presidente Señor Trías Monge no intervino. Los Jueces Asociados Señores Martín y Negrón García concurren en el resultado sin opinión. El Juez Asociado Señor Irizarry Yunqué emitió opinión disidente.

—O—

Opinión disidente emitida por el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 29 de junio de 1981

Dos razones me mueven a disentir: primera, que el Tribunal está enmendando, en clara pieza de legislación judicial, la Regla 94 de Procedimiento Criminal; y, se-

gunda, que no puedo compartir el criterio de que el derecho del acusado a confrontarse con los testigos contrarios y su derecho a contrainterrogarles equivalen a una misma cosa.

La Regla 94 de Procedimiento Criminal es clara. Dice así en su inciso (a):

### REGLA 94. DEPOSICIONES

(a) Fundamentos; testigo bajo arresto. Si se demostrare que un testigo se encuentra en condiciones de no poder asistir o que se le ha impedido asistir al juicio o a cualquier vista, que su testimonio es esencial y que es necesario tomarle su deposición para evitar un fracaso de la justicia, el tribunal, en cualquier tiempo después de la presentación de la acusación o denuncia podrá, *a moción del acusado* notificada a todas las partes, ordenar que el testimonio de dicho testigo se tome por deposición y que cualesquiera libros, papeles, documentos u objetos no privilegiados que se designen en dicha moción se presenten en el momento y lugar en que debe tomarse la deposición. Si se arrestare a un testigo por no haber prestado fianza para comparecer a un juicio o a un vista, el tribunal, a solicitud escrita del testigo arrestado notificada a las partes, podrá ordenar que se tome su deposición. Después de suscrita la deposición el tribunal podrá despachar al testigo. (Énfasis suplido.)

Esta regla se adoptó, en una traducción literal, de la Regla 15(a) de Procedimiento Criminal federal. Se advierte que, contrario al procedimiento civil en que las partes tienen derecho a tomar deposiciones como un medio de descubrimiento de prueba, en lo criminal las deposiciones pueden tomarse solamente si un tribunal lo ordena y no con fines de descubrimiento de prueba, sino para preservar prueba. La autorización para tomar una deposición en el procedimiento criminal se concede únicamente bajo "circunstancias excepcionales". Véanse 1 Wright, *Federal Practice and Procedure*, Sec. 241; *United States* v. *Singleton*, 460 F.2d 1148 (1972), *cert.* denegado 410 U.S. 984; *United*

States v. *Whiting*, 308 F.2d 537 (1962); *Crowe et al.* v. *United States, cert.* denegado, 372 U.S. 909 (1963).

Adviértase que nuestra Regla 94(a), como la 15(a) federal cuando se adoptó, limita expresamente la toma de deposiciones a que se inste "a moción del acusado". El Comité Consultivo del Tribunal Supremo federal había recomendado que se confiriera igual prerrogativa al Ministerio Público pero, como expresó el profesor McCormick: "El tribunal, sin ofrecer explicaciones, denegó la recomendación y limitó la toma de deposiciones exclusivamente al acusado." McCormick, *Law of Evidence*, pág. 486, (1954). Se ha expresado como razón para ello que es preferible para el gobierno perder unos cuantos casos, a reclamar algo que pueda interpretarse como que favorece un juicio a base de lo expresado en papeles". Véanse Dession, *The New Federal Rules of Criminal Procedure: II*, 56 Yale L.J. 197, 218 (1947); 2 Orfield, *Criminal Procedure under the Federal Rules*, Sec. 15:10, pág. 464 (1966).

La Regla 15(a) federal permite ahora que el Ministerio Público pueda, como el acusado, solicitar y obtener permiso para tomar una deposición a un testigo, sujeto a las limitaciones que establece dicha Regla. Pero para ello fue necesaria la actuación del Congreso mediante legislación. Véanse Ley Pública 91–452 de 15 de octubre de 1970, 18 U.S.C.A. sec. 3503; Wright, *op. cit.*, suplemento de bolsillo para 1978, págs. 224–228; Orfield, *op. cit.*, suplemento de agosto, 1980, págs. 91–92. No es menester discutir aquí los méritos de tal determinación del Congreso. Posiblemente sea deseable que nuestra Asamblea Legislativa tome igual medida en cuanto a la Regla 94(a). Pero es a la Asamblea Legislativa a quien compete hacerlo; no a este Tribunal. Este Tribunal tiene facultad para adoptar reglas de procedimiento, pero tienen que remitirse a la Asamblea Legislativa al comienzo de una sesión ordinaria y estarán sujetas a su aprobación o rechazo. No tiene facultad para

enmendarlas por su cuenta, sin el concurso de la Asamblea Legislativa. (¹)

Convengo en que el acusado podría consentir a que el fiscal tome una deposición a un testigo. Y podría argüirse que hubo dicho consentimiento en este caso al comparecer su abogado al acto de toma de deposición y contrainterrogar al deponente. Pero no surge de los autos ante nos que el acusado renunciara a confrontarse con el deponente para que su deposición pueda admitirse en sustitución de su testimonio oral durante el juicio. La toma de deposición no tiene en lo criminal el alcance que tiene en lo civil, como ya hemos señalado. No se trata de descubrimiento de prueba y sí de perpetuar un testimonio. Es imprescindible, para que ese testimonio sea admisible, que se garantice al acusado su derecho a carearse con el testigo. Ello no se hizo aquí.

El derecho a "carearse con los testigos de cargo" está consagrado en la Carta de Derechos de la Constitución, Art. II, Sec. 11. En la Constitución federal se le llama *the right of confrontation*, y está reconocido en la Sexta Enmienda. Desde *Pointer* v. *Texas*, 380 U.S. 400 (1965), determinó el Tribunal Supremo federal que se trata de un "derecho fundamental", obligatorio para los Estados vía la Enmienda Catorce. La renuncia a un derecho constitucional fundamental no se presume. *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 720, 738 (1978); *F.S.E.* v. *Comisión Industrial*, 105 D.P.R. 261 (1976). Debe ser expresa y no presunta, así como voluntaria y efectuada con pleno conocimiento de causa. *Pueblo* v. *Arcelay Galán*, 102 D.P.R.

---

(¹) Dispone el Art. V de la Constitución, en su Sec. 6:

"El Tribunal Supremo adoptará, para los tribunales, reglas de evidencia y de procedimiento civil y criminal que no menoscaben, amplíen o modifiquen derechos sustantivos de las partes. Las reglas así adoptadas se remitirán a la Asamblea Legislativa al comienzo de su próxima sesión ordinaria y regirán sesenta días después de la terminación de dicha sesión, salvo desaprobación por la Asamblea Legislativa, la cual tendrá facultad, tanto en dicha sesión como posteriormente, para enmendar, derogar o complementar cualquiera de dichas reglas, mediante ley específica a tal efecto."

409, 415–416 (1974); *Pueblo* v. *Morales Romero*, 100 D.P.R. 436 (1972), citados en *Pagán Hernández*, supra, pág. 738.

El Tribunal Supremo federal ha sido igualmente exigente cuando de renunciar a un derecho fundamental se trata, y a tales efectos define la renuncia como "el desistimiento o abandono *intencional* de un derecho o privilegio conocido" (*an intentional relinquishment or abandonment of a known right or privilege*). *Johnson* v. *Zerbst*, 304 U.S. 458, 464 (1938); *Brookhart* v. *Janis*, 384 U.S. 1, 4 (1966); *Barber* v. *Page*, 390 U.S. 719, 725 (1968).

*Dutton* v. *Evans*, 400 U.S. 74 (1970), en que descansa la opinión de este Tribunal, no es autoridad para sostener que se puede prescindir aquí del derecho a confrontación. En *Evans* cuatro jueces del Tribunal Supremo reconocen que hay determinadas excepciones a la regla sobre prueba de referencia que no infringen la disposición constitucional, dada su garantía de veracidad. Me parece muy importante señalar que en *Evans* no hubo opinión del Tribunal. El Juez Asociado señor Stewart emitió la "sentencia del Tribunal" (*announced the judgment of the Court*) y una opinión a que se unieron el Juez Presidente y los jueces asociados White y Blackmun.(²) El Juez Harlan concurrió en el resultado con opinión, y el Juez Marshall emitió opinión disidente a la que se unieron los jueces Black, Douglas y Brennan.

Es de notarse además, que en *Evans* se trataba de un comentario que era prueba de referencia —"[s]i no fuera por el sucio hijo de perra Alex Evans, no estaríamos metidos en esto ahora"— del cual a lo sumo podía inferirse una admisión. No se trataba de una declaración extensa a utilizarse en sustitución del testimonio de un testigo, que es el caso ante nuestra consideración.

Finalmente, aparte de ese comentario, que el Juez

---

(²) El Juez Blackmun, por su parte, emitió una opinión concurrente a la que se unió el Juez Presidente, y comentó: "El error aquí habido, si es que existe, es inofensivo más allá de una duda razonable." Pág. 93.

Blackmun consideró "inofensivo más allá de una duda razonable", hubo en *Evans* prueba abundantísima para sostener la convicción del acusado. Expresó el Juez Stewart al anunciar la sentencia del Tribunal, pág. 87:

En el acto del juicio no menos de 20 testigos comparecieron a testificar como prueba de cargo. El abogado de Evans tuvo plena oportunidad de contrainterrogar a cada uno. El testigo más importante lo fue, por mucho, un testigo ocular que describió todos los detalles del triple asesinato y que fue contrainterrogado ampliamente. De los restantes 19 testigos, solamente el testimonio de uno es objeto de planteamiento aquí. Dicho testigo declaró sobre una breve conversación sobre Evans que él tuvo con un compañero de prisión en la Penitenciaría de Atlanta. El testigo fue contrainterrogado vigorosamente y con efectividad por el abogado defensor. Su testimonio, que fue a lo sumo de significación periférica, se admitió como prueba bajo una excepción sobre co-conspiradores a la regla sobre prueba de referencia por largo tiempo establecida en los estatutos del Estado.

El derecho al careo, por ser fundamental, no puede interpretarse restrictivamente. Si bien se asocia generalmente este derecho con el derecho a contrainterrogar al testigo contrario, es más amplio que éste. El derecho a contrainterrogar es parte del derecho al careo, pero no es el derecho al careo. El careo supone, además, la confrontación cara a cara entre el testigo de cargo y el acusado en presencia del tribunal. El derecho a esta confrontación surge desde el momento mismo en que el testigo comienza a declarar, mientras que el derecho a contrainterrogar surge una vez el testigo ha evacuado su testimonio en examen directo.[3]

Hace muchos años, en *Mattox* v. *United States*, 156 U.S. 237, 242–243 (1895), dijo el Tribunal Supremo:

---

[3] *Pueblo* v. *Vargas*, 74 D.P.R. 144 (1952), en que descansa la opinión de este Tribunal para justificar la equiparación entre confrontación y contrainterrogatorio no es autoridad para ello, pues ni se le planteó ni tenía que resolverlo. Además, lo que allí se resuelve es que la renuncia a contrainterrogar hecha por el abogado en el curso del juicio obliga al acusado sin necesidad de su consentimiento expreso.

El objetivo primario de la disposición constitucional en cuestión [la cláusula sobre confrontación de la Sexta Enmienda] fue evitar el uso de deposiciones o de declaraciones juradas ex parte . . . contra el acusado en lugar del examen y repregunta del testigo en que el acusado tiene la oportunidad, no solamente de cuestionar la memoria y de escudriñar la conciencia del testigo, sino también de *obligarle a estar cara a cara en presencia del jurado* para que éste le vea y juzgue a base de su comportamiento (*demeanor*) en la silla testifical y la manera como expone su testimonio si es digno de crédito. (Énfasis suplido.)

Esas expresiones continúan teniendo hoy el mismo respaldo del Tribunal Supremo, que las ha citado con aprobación en *Barber* v. *Page*, supra, pág. 721; en *Douglas* v. *Alabama*, 380 U.S. 415, 418 (1965); *California* v. *Green*, 399 U.S. 149, 156-157 (1970). Véase, al mismo efecto, *Mancusi* v. *Stubbs*, 408 U.S. 204, 213 (1972).

El principio está recogido, además, en la Regla 40 de Evidencia, que dice:

Un testigo podrá testificar únicamente *en presencia de todas las partes* involucradas en la acción y estará *sujeto a ser interrogado por todas ellas*, si éstas optan por asistir a la vista y por interrogar al testigo. (Énfasis suplido.)

Véase Lilly, *An Introduction to the Law of Evidence*, West Publishing Co., 1978, pág. 275.

No creo que pueda cuestionarse que a un testigo le es más fácil mentir e incriminar a una persona a espaldas de ésta que frente a ella. "Carear" viene de *cara* y se define: "Poner a una o varias personas en presencia de otra u otras, con objeto de apurar la verdad de dichos o hechos". Diccionario de la Lengua Española, Real Academia Española, 19na ed., pág. 260. No puede haber careo, ni en la acepción vulgar ni en la acepción técnica jurídica de la palabra, si el testigo acusador no está cara a cara frente al acusado, no solamente cuando es contrainterrogado por el abogado, sino desde el momento en que que comienza a testificar.

Lo expresado no pasa por alto la Regla 64(B)(1) de Evidencia, que dispone:

(B) Cuando el declarante no está disponible como testigo, es admisible como excepción a la regla de prueba de referencia:

(1) *Testimonio anterior:* Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento, si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que que tiene en la vista.

Esta regla no puede tomarse livianamente frente a las disposiciones constitucionales mencionadas, que tratan específicamente del derecho del acusado al careo o confrontación con los testigos contrarios *en todo proceso criminal.* La regla se ha adoptado por razón de necesidad, pero sin que se menoscabe ese derecho fundamental, porque las leyes no pueden estar reñidas con disposiciones constitucionales.

La razón de permitir tal tipo de prueba, en función de necesidad, la expone la regla a base de no disponibilidad del testigo. Sobre este aspecto el Tribunal Supremo federal ha sido igualmente riguroso. El caso decisivo lo es *Barber* v. *Page,* antes citado. En una vista preliminar en que Barber, acusado de robo, estaba presente y representado por abogado, testificó un coacusado, Woods, incriminando a Barber. El abogado de Barber tuvo oportunidad de contrainterrogar a Woods, pero no lo hizo. Al llamarse el caso para juicio contra Barber siete meses más tarde — el juicio se celebró en un tribunal del estado de Oklahoma— se ofreció por el Ministerio Público y se admitió por el tribunal, sobre la objeción de Barber, una transcripción del testimonio prestado por Woods en la vista preliminar. Se adujo que Woods no estaba disponible porque se hallaba encarcelado en una penitenciaría federal en un lugar del estado de Texas, a 225 millas del tribunal de Oklahoma.

Al revocar la convicción de Barber, expresó el Tribunal Supremo, en decisión unánime, luego de reconocer el carácter fundamental del derecho de confrontación y que no hubo una renuncia efectiva a dicho derecho, que no se demostró que el Ministerio Fiscal hiciera alguna diligencia para obtener la comparecencia del testigo. Dijo el Tribunal, pág. 723:

Hay que reconocer que varios tribunales y comentaristas han asumido hasta aquí que la mera ausencia de un testigo de la jurisdicción era suficiente base para dispensar el requisito de confrontación bajo la teoría de que "es imposible compeler su asistencia, porque el proceso en la corte en que se celebra el juicio no tiene fuerza obligatoria fuera de su jurisdicción, y la parte que desea su testimonio está por tanto desamparada". 5 Wigmore, *Evidence* § 1404 (3ra ed. 1940).

Cualquiera que fuera la corrección de esa teoría en determinado tiempo, es claro que hoy en día ha quedado largamente privada de toda validez en el Derecho penal, dada la cooperación, cada vez en aumento, entre unos estados y otros y entre los estados y el gobierno federal. [4]

En las páginas 724–725, *in fine*, expresó:

Para abreviar, un testigo "no está indisponible" para fines de la excepción al requisito de confrontación a menos que el ministerio público haya hecho un esfuerzo de buena fe para obtener su presencia en el juicio. Aquí el Estado no hizo tal esfuerzo y, hasta donde lo revelan los autos, la única razón para que Woods no estuviera presente para testificar en persona fue que el Estado no trató de asegurarse de su presencia. El derecho a confrontación no puede dispensarse tan livianamente.

Más aún, expresó el Tribunal que hubiese llegado a la misma conclusión aun si el abogado del acusado hubiese

---

[4] En un escolio, el número 4, de esa opinión, se señala entre las disposiciones que obligan a esa cooperación, la *Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings*, y se señala que para el 1967 dicha ley estaba en vigor en 45 Estados, el Distrito de Columbia, la Zona del Canal, *Puerto Rico* y las Islas Vírgenes.

contrainterrogado al testigo Woods durante la vista preliminar. Luego de citar *Motes* v. *United States*, 178 U.S. 458 (1900), dijo, pág. 725: "El derecho a confrontación es básicamente un derecho del juicio. Incluye tanto la oportunidad de contrainterrogar como la ocasión para que el jurado pueda sopesar el modo de conducirse el testigo." (5)

Las normas sentadas en *Barber* v. *Page* fueron reconocidas y sostenidas más recientemente en *Mancusi* v. *Stubbs*, antes citado.

Por las razones expuestas, confirmaría la resolución recurrida.

---

(5) Dice el original en inglés: "*The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness.*"