EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Wilfredo Ruiz<br><br>Peticionario | Certiorari<br><br>2019 TSPR 204<br><br>203 DPR ____ |

Número del Caso: CC-2018-119

Fecha: 6 noviembre de 2019

Tribunal de Apelaciones:

Región Judicial de Bayamón y Carolina, Panel VIII

Abogado de la parte peticionaria:

Lcdo. Eduardo J. González De Jesús

Oficina del Procurador General:

Lcdo. Luis Román Negrón
Procurador General

Materia: Resolución del Tribunal con Voto particular de conformidad y Votos particulares disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Recurrido<br><br>      v.<br><br>Wilfredo Ruiz<br><br>    Peticionario | CC-2018-0119 | Certiorari |

RESOLUCIÓN

San Juan, Puerto Rico, a 6 de noviembre de 2019.

Examinada la *petición de certiorari*, presentada por el Sr. Wilfredo Ruiz, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió un Voto particular de conformidad al cual se le unieron los Jueces Asociados señores Rivera García y Feliberti Cintrón. Los Jueces Asociados señores Kolthoff Caraballo, Estrella Martínez y Colón Pérez emitieron respectivamente Votos particulares disidentes. La Jueza Presidenta Oronoz Rodríguez se unió al Voto particular disidente del Juez Asociado señor Estrella Martínez.


                    José Ignacio Campos Pérez
                Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.                        CC-2018-0119

Wilfredo Ruiz

    Peticionario

Voto particular de conformidad emitido por el Juez Asociado Señor Martínez Torres al cual se unieron los Jueces Asociados Señor Rivera García y Señor Feliberti Cintrón

En San Juan, Puerto Rico, a 6 de noviembre de 2019.

En este caso, me parece que el Ministerio Público satisfizo el requisito de razonabilidad para tratar de lograr la comparecencia del testigo ausente, que se entiende que está en New Jersey o Connecticut. Concluir lo contrario es exigir que se haga algo más, pues esa obligación no se extiende a hacer gestiones inútiles, cuya probabilidad de hallar al testigo sea altamente improbable. Por los fundamentos que expongo a continuación, entiendo que en este caso se hicieron las diligencias pertinentes para localizar al testigo.

I

En los hechos pertinentes a la controversia que tenemos ante nuestra consideración, el Ministerio Público presentó cargos contra el Sr. Wilfredo Ruiz por hechos ocurridos el 7 de abril de 2014. Durante la vista preliminar, el Ministerio Público ofreció el testimonio del señor Gabriel Caraballo Atanasio, quien era el único testigo de los hechos imputados en contra del señor Ruiz. El testimonio del señor Caraballo Atanasio fue dado bajo juramento y sujeto a contrainterrogatorio. El señor Ruiz se acogió a su derecho a juicio por jurado.

Luego de varios incidentes procesales, el 14 de febrero de 2017 comenzó el desfile de prueba. Ese mismo día, el Ministerio Público informó que no había podido localizar al señor Caraballo Atanasio. Solicitó que se determinara que era un testigo no disponible y que se celebrara una vista en ausencia del jurado para demostrar las gestiones realizadas por el Pueblo para localizarlo. Además, el Ministerio Público solicitó que el testimonio del señor Caraballo Atanasio fuera sustituido por el testimonio que ofreció en la vista preliminar.

Durante la vista al amparo de la Regla 109(A) de Evidencia, 32 LPRA Ap. VI, el Ministerio Público presentó el testimonio del agente Alex Montañez Molina, quien afirmó que conocía al señor Caraballo Atanasio y que este declaró en la vista preliminar. En síntesis, el agente declaró que fue a buscar al señor Caraballo Atanasio a la casa de su tío en el

Barrio Hato Nuevo de Guaynabo y que el tío le dijo que su sobrino se había ido a New Jersey. Sin embargo, el tío del señor Caraballo Atanasio indicó que antes de irse estuvo viviendo con su abuela en el Barrio Camarones, Sector Mangotín en Guaynabo. Tampoco lo encontró en casa de la abuela, pero al entrevistarla corroboró que el señor Caraballo Atanasio se había mudado. Además, el agente Montañez Molina declaró que diligenció *subpoenas* en el Departamento de la Familia, Departamento de Hacienda y en el Departamento de Transportación y Obras Públicas y que todas resultaron infructuosas. También testificó, que su supervisor, el Sargento Bonilla, le indicó que hizo gestiones con el Bureau of Alcohol, Tobacco, Firearms and Explosives, pero que estas fueron negativas.

Luego de escuchar el testimonio, el foro primario concluyó que las gestiones que realizó el Ministerio Público eran suficientes y que procedía declarar no disponible al testigo. Mediante una solicitud de reconsideración, la defensa del peticionario argumentó que la última gestión realizada había sido aproximadamente seis meses antes de la vista y que, por tratarse de un juicio por jurado, los derechos constitucionales a la confrontación y al contrainterrogatorio cobraban mayor relevancia. Ante estos planteamientos, el Tribunal de Primera Instancia ordenó al Ministerio Público realizar una gestión adicional con el tío para localizar al testigo y continuar la vista el próximo día.

Al día siguiente, declaró el tío del testigo, el Sr. Miguel Ángel Rivera Fuentes, quien testificó que vivía en el Barrio Hato Nuevo de Guaynabo. Declaró desconocer el paradero de su sobrino. Indicó que la madre de su sobrino vivía en Connecticut. Además, declaró que su sobrino decidió irse de Puerto Rico al enterarse que habían ido por el barrio buscándolo con armas largas. Añadió que su sobrino se había ido hacía más de un año. También dijo que conoció al agente Montañez Molina, porque desde comienzos del caso este último lo visitó en varias ocasiones. Según el testimonio, su sobrino lo llamó dos meses después de que el agente lo visitó. Posteriormente, cuando el agente volvió a visitar al tío, este último le proveyó el número de teléfono desde el cual su sobrino lo llamó en una ocasión. Tras escuchar ambos testimonios, el foro primario reiteró su determinación, procedió a declarar al testigo como uno no disponible y autorizó a utilizar en juicio el testimonio dado por este en vista preliminar.

Inconforme, el señor Ruiz acudió ante el Tribunal de Apelaciones y presentó una solicitud de certiorari. Allí, señaló que el foro primario erró al concluir que el Ministerio Público realizó las debidas diligencias para conseguir al testigo y como consecuencia declararlo no disponible, lesionando así- supuestamente- su derecho a la confrontación.

Por su parte, el Procurador General compareció y argumentó que la Regla 806(A)(5) de Evidencia, supra, solo

exige gestionar la comparecencia del testigo mediante una citación, con lo cual el Ministerio Público cumplió. Además, expresó que los fiscales realizaron esfuerzos de buena fe para citar al testigo. El Tribunal de Apelaciones confirmó el dictamen del Tribunal de Primera Instancia.

Ante esto, el señor Ruiz acudió ante este foro y presentó una solicitud de certiorari. En esencia planteó los mismos errores que planteó en el foro apelativo intermedio. Sin embargo, presentó una moción en auxilio de jurisdicción para que se paralizara el juicio por jurado, en lo que evaluábamos su recurso. Ante esta situación, proveímos ha lugar a la moción en auxilio de jurisdicción y paralizamos el caso. Asimismo, le solicitamos al Estado que mostrara causa por la cual no se debía expedir el recurso y revocar al Tribunal de Apelaciones. Tras evaluar el expediente, estoy de acuerdo con la determinación de proveer no ha lugar a la solicitud de certiorari.

II

Está establecido que por imperativo del derecho constitucional a la confrontación con los testigos que se reconoce en la Enmienda Sexta de la Constitución de Estados Unidos y en el Art. II, Sec. 11 de la Constitución de Puerto Rico, 1 LPRA, así como en la Regla 806 de Evidencia, supra, solamente se admite como prueba la declaración de un testigo ausente si el Ministerio Público hizo todas las gestiones razonables para lograr su comparecencia. Barber v. Page, 390 US 719 (1968). Ahora bien, al gobierno no se le requiere

hacer gestiones que no conducen a nada. No basta con tratar de diligenciar una citación, pero no hay que seguir insistiendo cuando es evidente que no es probable dar con el testigo ausente. Siempre es posible imaginar pasos adicionales que el Estado pudo tomar, pero ese no es el estándar aplicable. No se requiere que el Estado agote todas las gestiones posibles, aunque su posibilidad de éxito sea escasa. Hardy v. Cross, 565 US 65 (2011). En fin, el criterio rector es la razonabilidad de las medidas que el Estado tomó. Ohio v. Roberts, 448 US 56 (1980). Así, por ejemplo, cuando un testigo abandonó la jurisdicción y ni siquiera su familia sabe con certeza dónde está, no se requiere que el Ministerio Público siga haciendo gestiones con poca probabilidad de éxito. Íd.

En este caso, se puede concluir que cualquier gestión para localizar al señor Caraballo Atanasio tendría poca posibilidad de éxito. Solo existe un indicio de que el testigo se encuentra en Connecticut o en New Jersey. Ante eso, este Tribunal exige que se hagan gestiones con las autoridades federales y con las estatales de Connecticut y hasta de New Jersey, otro posible destino del testigo.

No sé qué gestiones podría hacer el Ministerio Público en esos dos estados de la Unión que pudieran tener alguna probabilidad razonable de éxito. Después de todo, New Jersey ocupa 8,723 millas cuadradas con una población estimada de 8,922,547 habitantes. New Jersey Population 2018, World Population Review, http://worldpopulationreview.com/states/new-

jersey-population/, consultado por última vez el 18 de octubre de 2019. Es el estado de mayor densidad poblacional (1,022.8 personas por milla cuadrada). Íd. Por su parte, Connecticut tiene un área de 5,567 millas cuadradas y una población estimada para 2017 de 3,572,665 habitantes. Connecticut Population Estimates 2018, US Census Bureau, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml?src=bkmk, consultado por última vez el 18 de octubre de 2019. Es el cuarto estado en densidad poblacional, con 641.7 habitantes por milla cuadrada.

¿En qué lugar las autoridades iban a buscar al testigo en esos dos estados? ¿En una zona urbana o rural? ¿En qué ciudad? ¿En Trenton? ¿En Newark o en Paterson? ¿En Hartford? ¿New Haven? ¿Bridgeport? ¿En otra ciudad? Esto no es tan simple como buscar a alguien en una calle pequeña de una urbanización. Basta advertir cuán fácil es desaparecer en una jungla de concreto en esos estados.

Aseverar que el testigo puede estar en algún lugar de un estado o del otro es decir que no se sabe dónde está. No hay diligencia adicional posible que hacer con tan poca información disponible. La realidad es que en este caso el Ministerio Público hizo las gestiones razonables para tratar de que el testigo de cargo compareciera. Visitó a los familiares, quienes dijeron que desconocían el paradero del testigo. Diligenció sin éxito requerimientos de información en el Departamento de la Familia y en el Departamento de Transportación y Obras Públicas. Además, trató de

localizarlo, sin éxito, al hacer gestiones con el *Bureau of Alcohol, Tobacco, Firearms and Explosives*.

Por último, me preocupa el efecto sobre el interés público de requerir hacer más diligencias en casos como este. No olvidemos que, en este caso en particular, el testigo se ausentó -desapareció- por miedo a su seguridad. Temía por su vida. Al hacer más difícil al Ministerio Público presentar el testimonio perpetuado de un testigo desaparecido, le damos un incentivo al crimen organizado para amenazar a los testigos si no desaparecen de la jurisdicción antes del juicio. El testigo preferirá esfumarse para evitar daños a él o su familia, y como siempre hay gestiones adicionales que hacer, aunque su posibilidad de éxito sea "remota", el Ministerio Público no podrá utilizar el testimonio que preservó de ese testigo ausente. Eso aumenta la posibilidad de que los criminales queden impunes ante la inadmisibilidad de evidencia en su contra.

El criterio jurisprudencial de razonabilidad de las gestiones del Ministerio Público para lograr la comparecencia del testigo hace un balance adecuado entre los derechos de los acusados y el interés público. Las gestiones con "remotas" posibilidades de éxito no son razonables; son las gestiones inútiles que hasta hoy se entendían innecesarias. Hardy v. Cross, supra. De esta forma, resolver lo contrario es exigir

lo que siempre habíamos dicho que no era necesario, por lo que estoy conforme con el resultado al que llegó el foro inferior.


                              RAFAEL L. MARTÍNEZ TORRES
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

     Recurrido

                              CC-2018-0119     Certiorari

       v.

Wilfredo Ruiz

     Peticionario

Voto particular disidente emitido por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 6 de noviembre de 2019.

En las circunstancias de este caso ciertamente no se cumplió con el requisito que exige la Regla 806 de las Reglas de Evidencia,[1] relacionado al deber que tiene el Estado de haber 'desplegado diligencia para conseguir' la comparecencia del testigo. Es decir, haber realizado los esfuerzos razonables conducentes a localizarlo. Esto, pues el Estado cesó de hacer esfuerzos para conseguir al testigo **6 meses antes del inicio del juicio.**

_____
[1] 32 LPRA Ap. VI, R. 806.

Ahora bien, en la situación particular de este caso, un esfuerzo razonable hubiera sido que el Estado -al menos- hubiese repetido las mismas gestiones que se realizaron, pero en fechas mucho más cercanas o próximas al inicio del juicio, confirmando así que el testigo no había regresado a la jurisdicción recientemente y, por lo tanto, permanecía como testigo no disponible.

El problema aquí no fue uno de ausencia de intensidad en la gestión, sino que de falta de actualización *(update)* en fechas más cercanas al inicio del juicio de las gestiones que correctamente se habían realizado. Eso bastaba para poner a los tribunales *a quo* en posición de poder resolver que ciertamente se había desplegado la diligencia necesaria y razonable para concluir que el testigo no estaba disponible.

Por todo lo anterior, disiento de la determinación de este Tribunal, pues entiendo que procedía la expedición del recurso.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

Recurrido

v.                                    CC-2018-0119      Certiorari

Wilfredo Ruiz

Peticionario

Voto particular disidente emitido por el Juez Asociado señor ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 6 de noviembre de 2019.

Ante los avances tecnológicos y las relaciones de cooperación mutua en la lucha contra el crimen entre las diversas jurisdicciones de los Estados Unidos, resulta alarmante que el Gobierno de Puerto Rico no haya realizado gestión alguna, durante los seis (6) meses previos a un juicio, para localizar al único testigo presencial de los hechos cuyo paradero apuntaba a que reside en New Jersey o Connecticut, según información provista por su propia familia. Igualmente, preocupante es que una Mayoría de este Tribunal, con un "no ha lugar", avale ese cuadro de omisiones, a pesar de las garantías constitucionales reconocidas por nuestro

ordenamiento jurídico, incluso en la jurisprudencia del Tribunal Supremo de los Estados Unidos. Por ello, disiento.

**I**

Los hechos que originan la controversia ante nuestra consideración se remontan al 7 de abril de 2014, cuando el Ministerio Público presentó cargos contra el Sr. Wilfredo Ruiz (señor Ruiz o peticionario).[1] En la correspondiente vista preliminar, el Ministerio Público presentó el testimonio del Sr. Ramón G. Caraballo Atanasio (señor Caraballo o testigo de cargo), único testigo presencial de los hechos, quien testificó bajo juramento y fue sujeto a contrainterrogatorio. En la vista se encontró causa probable por los delitos imputados.

Así las cosas, el 14 de agosto de 2017, cuando estaba pautado empezar el desfile de prueba en el juicio en su fondo,[2] el Ministerio Público solicitó que se declarara al señor Caraballo como testigo no disponible y se admitiera su testimonio anterior realizado en la vista preliminar.[3]

---

[1]Se le imputaron violaciones al Art. 93 del Código Penal, 33 LPRA sec. 5142, y a los Arts. 5.04 y 5.15 de la Ley de Armas de Puerto Rico, 25 LPRA secs. 458 y 458n.

[2]Es meritorio señalar que el juicio en su fondo será por jurado.

[3]Debemos señalar que la defensa informó que no tiene reparos en que se admita la prueba siguiente: Informe médico forense; Informe de hallazgo de escena; el testimonio del agente Marco A. Betancourt Reyes, custodio de la escena, y el testimonio de Mariluz Nevares Guadalupe. En consecuencia, sólo resta presentar el testimonio del agente Alex Montañez Molina (agente Montañez); el testimonio de Nychira M. Ríos Acevedo y el testimonio de Ramón G. Caraballo Atanasio (señor Caraballo). Petición de certiorari, pág. 2.

Fundamentó su petición en que no había logrado localizarlo. De esa forma, solicitó que se procediera con una vista evidenciaria, conforme a la Regla 109 de las de Evidencia, 32 LPRA Ap. VI, R. 109, para demostrar las diligencias que habían realizado para localizarlo y lograr obtener su comparecencia para ese día. A esos efectos, el Tribunal de Primera Instancia permitió que se presentara la prueba correspondiente sobre las gestiones realizadas.

En las vistas evidenciarias, el Ministerio Público presentó como testigo al agente Alex Montañez Molina (agente Montañez). Según consta en la Resolución del Tribunal de Primera Instancia, éste declaró que después de la vista preliminar, visitó al testigo de cargo en varias ocasiones en la casa de su tío, lugar en el cual residía después de los hechos imputados. En una ocasión, el tío le informó que el señor Caraballo se había mudado a los Estados Unidos, específicamente a **New Jersey**. No obstante, le expresó que, previo a irse, se había mudado a la casa de su abuela, donde residió antes de los hechos imputados al peticionario. Por lo cual, el agente Montañez señaló que la visitó y corroboró con la abuela que el testigo se había ido a los Estados Unidos un mes antes de su visita. Luego, declaró que diligenció subpoenas al Departamento de la Familia, Departamento de Hacienda y al Departamento de Transportación y Obras Públicas, los cuales fueron infructuosos. Por lo cual, le solicitó ayuda a su supervisor, el Sargento Bonilla, quién le indicó que hizo

gestiones con las autoridades federales, específicamente, con el Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), pero también la gestión fue ineficaz. **Por último, atestiguó que la última fecha en la que hizo gestión alguna fue en febrero de 2017, es decir, seis meses antes de la vista.**[4]

Al día siguiente testificó el Sr. Miguel A. Rivera Fuentes (señor Rivera), tío del señor Caraballo. Éste declaró que la madre del testigo vive en **Connecticut**. Así también, afirmó que al momento de la vista no sabía el paradero exacto de su sobrino y que éste decidió mudarse de Puerto Rico hacía más de un año, ya que se sentía amenazado por personas que lo iban a buscar con armas largas en su barrio. A su vez, aseveró que incluso pensaba que el caso ya había terminado.

Por otro lado, el señor Rivera expresó, en cuanto a las diligencias del Ministerio Público, que el agente Montañez lo visitó entre cuatro a cinco ocasiones, antes que el señor Caraballo se fuera a los Estados Unidos. En la última ocasión, fecha que no recordaba exactamente pero que

---

[4] A pesar de que no surge de la Resolución del Tribunal de Primera Instancia, las partes en sus alegatos reconocen que el foro primario, luego del testimonio del agente Montañez, concluyó que el señor Caraballo era un testigo no disponible. Sin embargo, tras una solicitud de reconsideración por parte de la defensa, el tribunal ordenó que se hicieran gestiones adicionales con el tío del señor Caraballo, debido a que entendió que no era razonable el tiempo entre la última gestión para localizar el testigo y la celebración de la vista, entiéndase, seis meses. Por lo cual, el Ministerio Público presentó como testigo, al otro día, al referido tío, el Sr. Miguel A. Rivera Fuentes.

entendía que había sido **un año o año y medio antes de la vista**, le informó que su sobrino se había ido y que desconocía de su paradero. Empero, indicó que en una ocasión el señor Caraballo lo llamó para decirle que estaba bien y, luego, cuando el agente volvió a visitarlo buscó el celular donde tenía registrado el número de teléfono de aquella llamada. Por último, declaró que su madre, la abuela del testigo de cargo, a diferencia de lo declarado por el agente Martínez, llevaba dos años encamada y no podía hablar.

Luego de culminada la presentación de la prueba, el Tribunal de Primera Instancia concluyó que la no disponibilidad del testigo de cargo no era atribuible al Ministerio Público. Más aún, determinó que el hecho de que el testigo abandonó la jurisdicción de Puerto Rico estuvo fuera de su alcance. Por lo cual, dictaminó que, al ser razonables las gestiones realizadas para localizarlo, el señor Caraballo era un testigo no disponible y autorizó sustituir el posible testimonio que ofrecía en sala por el realizado en la vista preliminar.

Inconforme, el señor Ruiz acudió al Tribunal de Apelaciones. Señaló que el foro primario incidió al concluir que el testigo de cargo era uno no disponible a pesar de no haberse establecido que se hicieron las debidas diligencias ni se utilizaron los medios razonables para localizar al testigo, con el efecto de violar su derecho constitucional a la confrontación. Particularmente, arguyó

que desde mayo de 2016 el Ministerio Público tenía conocimiento de que el señor Caraballo estaba en los Estados Unidos y que las diligencias que realizó el agente Montañez fueron una mera formalidad e insuficientes. Más aún, señaló que las gestiones no fueron de buena fe, ya que el agente Montañez no visitó al tío por más de un año desde que supo que el testigo se había ido para los Estados Unidos.

Por su parte, el Estado alegó que de los testimonios del agente Montañez y del señor Rivera surgió claramente la no disponibilidad del señor Caraballo. Ello, debido a que se fue de Puerto Rico sin decir a dónde por su seguridad. Asimismo, enfatizó que se hizo todo lo posible para localizarlo, por ejemplo, citaciones y solicitar ayuda a agentes federales. Por lo cual, argumentó que se satisfizo el requisito de realizar diligencias razonables de buena fe y que las gestiones que se realizaron fueron suficientes según la jurisprudencia federal.

Ponderados los argumentos de las partes, el foro apelativo intermedio confirmó al Tribunal de Primera Instancia. Asimismo, concluyó que, dado que el señor Caraballo abandonó Puerto Rico por miedo a su seguridad, era altamente improbable que esfuerzos adicionales resultaran en localizar al testigo. Así pues, determinó que esfuerzos, más allá de los realizados, serían inútiles e innecesarios.

En desacuerdo, el peticionario acudió ante este Tribunal. En esencia, reproduce los argumentos esgrimidos ante el foro recurrido. A su vez, presentó una moción en auxilio de jurisdicción, dado que, si no paralizábamos los procedimientos en el foro primario, continuaría el juicio por jurado. A esos efectos, ordenamos la paralización de los procedimientos y le concedimos al Estado un término de veinte días para que mostrara causa por la cual no se debía expedir el recurso y revocar al Tribunal de Apelaciones. En cumplimiento de nuestra orden, así lo hizo.

Con el beneficio de la comparecencia de las partes, procede examinar el derecho aplicable.

## II

Por su importancia en el caso de autos, es pertinente examinar de forma somera lo que se ha conocido jurisprudencialmente como el derecho a la confrontación. Al respecto, la Enmienda Sexta de la Constitución de los Estados Unidos dispone que "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . .". Enmda. VI, Const. EE. UU., LPRA, Tomo 1. Por su parte, la Sección 11 de la Carta de Derechos de la Constitución de Puerto Rico establece que "[e]n todos los procesos criminales, el acusado disfrutará del derecho . . . **a carearse con los testigos de cargo . . .**". (Énfasis suplido) Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1, ed. 2016, pág. 354.

Según se ha reconocido, ese derecho a la confrontación atiende tres aspectos: el derecho del acusado de confrontar cara a cara a los testigos adversos; el derecho a contrainterrogarlos, y el derecho a que se excluya la prueba de referencia que el Ministerio Público intente presentar en su contra. Pueblo v. Pérez Santos, 195 DPR 262, 269-270 (2016); Pueblo v. Santos Santos, 185 DPR 709, 720 (2012). Véanse, además, E.L. Chiesa Aponte, Reglas de Evidencia comentadas, Eds. SITUM, Inc., 2016, pág. 282; E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, V. I, pág. 569.

No empece a lo anterior, hemos indicado que, en algunas instancias, "el derecho del acusado a carearse y contrainterrogar a los testigos de cargos habrá de ceder ante la admisibilidad de cierta prueba de referencia, sin que ello implique una violación constitucional". Pueblo v. Pérez Santos, supra, pág. 270. Por ello, en nuestro ordenamiento probatorio existen múltiples excepciones a la prohibición de la prueba de referencia.

A esos efectos, cuando se pretenda presentar prueba de referencia contra un acusado, habrá que examinar si se viola el derecho a la confrontación, según reconocido en la Constitución de los Estados Unidos y en la Constitución de Puerto Rico. Para realizar ese ejercicio, el Tribunal Supremo federal ha indicado que lo primordial es determinar si la prueba de referencia presentada es de carácter

testimonial. Es decir, únicamente la prueba de referencia con carácter testimonial activa el derecho a la confrontación. Crawford v. Washington, 541 U.S. 36, 52-53 (2004). Véase, además, Pueblo v. Guerrido López, 179 DPR 950, 967 (2010).[5]

A raíz de ello, la normativa es que la cláusula de confrontación de la Enmienda Sexta de la Constitución federal "sólo permite la admisión en evidencia de una declaración testimonial hecha contra un acusado fuera de corte si (1) **el declarante no está disponible para comparecer al juicio** y (2) el acusado tuvo la oportunidad de contrainterrogar al declarante en el momento en que se hizo la declaración". (Énfasis suplido). Pueblo v. Santos Santos, supra, pág. 721. Véase, además, Crawford v. Washington, supra.

### III

La prueba de referencia es definida como una declaración, oral o escrita, "que no sea la que la persona declarante hace en un juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". 32 LPRA Ap. VI, R. 801. La norma general en el derecho probatorio es que la prueba de referencia no es admisible en el

---

[5] Una declaración es testimonial y, por consiguiente, inadmisible en corte, cuando su propósito principal es crear un sustituto extrajudicial para el testimonio que se ofrecería en corte. Michigan v. Bryant, 562 U.S. 344, 359-360 (2011). Véanse, también, Pueblo v. Pérez Santos, 195 DPR 262, 271 (2016); Pueblo v. Santos Santos, 185 DPR 709, 723 (2012).

tribunal. 32 LPRA Ap. VI, R. 804. Su exclusión se da "por razón de que la parte contra quien se ofrece la evidencia no ha tenido oportunidad de confrontarse con el declarante, particularmente en cuanto a la oportunidad de contrainterrogarlo". Chiesa Aponte, Reglas de Evidencia comentadas, op. cit., pág. 282.

No obstante lo anterior, en nuestro ordenamiento probatorio esa regla general de exclusión de prueba de referencia está sujeta a múltiples excepciones. Como excepción válida a esa norma y al derecho a la confrontación, el ordenamiento probatorio permite admitir como prueba en un juicio el testimonio anterior de un testigo no disponible. Su cimiento es que aunque se prefiere el testimonio en corte, el testimonio fuera de la corte es permitido si se prueba que el declarante no está disponible. McCormick on Evidence (K.S. Broun ed.), 7ma ed., Thompson Reuters, 2013, V. II, sec. 253, pág. 243; D.W. Louisell y C.B. Mueller, Federal Evidence, The Lawyer Co-operative Publishing Co., 1980, Vol. IV, sec. 486, pág. 1022. Así pues, las Reglas de Evidencia de Puerto Rico en la Regla 806 recogen la referida excepción. En el inciso (a) se disponen las ocasiones en las cuales efectivamente un testigo puede ser clasificado como no disponible. Entre ellas, y pertinente al caso de autos, el subinciso (5) menciona que un testigo será no disponible cuando "está ausente de la vista y quien propone la declaración ha **desplegado diligencia** para conseguir su comparecencia

mediante citación del tribunal". (Énfasis suplido). 32 LPRA Ap. VI, R. 806. A ello, añade que "[n]o se entenderá que una persona declarante está no disponible como testigo si ello ha sido motivado por la gestión o conducta de quien propone la declaración con el propósito de evitar que la persona declarante comparezca o testifique". Íd. De ese modo, la indisponibilidad del testigo no puede ser promovida por la parte, dado a que un proponente no debe beneficiarse de las consecuencias procesales de la indisponibilidad que ha causado. E. Vélez Rodríguez, La prueba de referencia y sus excepciones, San Juan, 2010, InterJuris, pág. 249.

Sobre el particular, el Profesor Chiesa Aponte comenta que es la causal más importante de no disponibilidad del testigo. Ello, ya que "**el tribunal debe hacer una determinación cautelosa de que el proponente ha hecho todo lo razonablemente posible para lograr la comparecencia del declarante**". (Énfasis suplido). Chiesa Aponte, Reglas de evidencia comentadas, op. cit., pág. 326. Es decir, "tendrá que demostrar que ha hecho todo esfuerzo razonable" pero que a pesar de ello no ha sido posible lograr la comparecencia del testigo. E.L. Chiesa Aponte, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, República Dominicana, Ed. Corripio, C. por A., T. II, pág. 728. A esos efectos, se deben llevar a cabo esfuerzos para procurar, específicamente, la comparecencia del testigo, no meramente para demostrar la

indisponibilidad. Louisell y Mueller, op. cit., pág. 1049. Para ello, no es necesario "explicar o demostrar la razón de la indisponibilidad del declarante". Vélez Rodríguez, op. cit., pág. 249. Eso es así, debido a las dificultades que tiene el demostrar las razones de la indisponibilidad por ser tan variadas. Íd.

De modo que, la mera ausencia del declarante no es suficiente. Se debe demostrar la inhabilidad de procurar la comparecencia del testigo, ya sea por los procesos estatuidos o realizando medidas razonables para procurarla. McCormick on Evidence, op. cit., pág. 248; C.S. Fishman, Jones on Evidence Civil and Criminal, 7ma ed., Thompson West, 2003, Vol. 5, sec. 36:12, pág. 428.

Lo anterior es así, debido a que, en casos criminales, está en pugna el derecho a la confrontación del acusado. Chiesa Aponte, Reglas de evidencia comentadas, op. cit.[6] Como bien comenta el Profesor Chiesa Aponte, la no disponibilidad es considerada un "requisito de rango constitucional, bajo la cláusula de confrontación de la Sexta Enmienda, para admitir testimonio anterior contra un acusado". Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., pág. 730. Más aún, en los casos que el declarante "es

---

[6]Tratadistas al respecto han interpretado que, en ciertas circunstancias, en los casos criminales, los tribunales deben requerirle mayor diligencia al Ministerio Público que a otros litigantes. C.S. Fishman, Jones on Evidence Civil and Criminal, 7ma ed., Thompson West, 2003, Vol. 5, sec. 36:14, pág. 433.

testigo de cargo, la cláusula de confrontación le imparte **rango constitucional al rigor exigido al gobierno** para tratar de lograr la comparecencia del testigo". (Énfasis suplido) Íd., pág. 729.

Se ha reconocido que para el Estado, por los recursos especiales y el poder que tiene especialmente en casos importantes o en los testigos de suma importancia, no es suficiente para establecer la indisponibilidad el hecho que se haya citado al testigo. El Ministerio Público debe realizar una búsqueda del testigo o buscar la forma apropiada de compelerlo a comparecer al juicio. Louisell y C.B. Mueller, op. cit., pág. 1051. Y es que se reconoce que el gobierno tiene los recursos investigativos para localizar y hacer que comparezca el testigo al juicio. Incluso, tiene el poder de arrestar y realizar la citación correspondiente. Íd., págs. 1050-1051.

Al contrario, ello no es necesariamente requerido a partes privadas. Íd., pág. 1052. El Profesor Vélez Rodríguez comenta que en casos civiles "la regla exige, *de minimis*, que el proponente demuestre el diligenciamiento de una citación (*subpoena*) judicial al declarante o el haber intentado deponer a éste". Vélez Rodríguez, op. cit., pág. 250. Por su parte, "[e]l Estado debe demostrar un grado de diligencia más allá de la mera citación judicial, particularmente si las circunstancias permitían inferir que ésta era un gesto fútil o ineficaz". Íd.

Este Tribunal no se ha expresado significativamente en torno a las diligencias que debe hacer el proponente de una prueba de referencia para lograr probar que un testigo no está disponible. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., pág. 730. No obstante, hemos realizado una serie de pronunciamientos en interpretación de esa regla probatoria. Examinemos cuáles son.

En Pueblo v. Ruiz Lebrón, 111 DPR 435 (1981), el acusado se ausentó en el juicio. Ante ello, éste se recalendarizó. Sin embargo, para la fecha que se señaló, el testigo esencial de cargo no estaría en Puerto Rico. Por ende, el tribunal ordenó que se tomara una deposición de su testimonio en presencia del acusado y de su abogado. Efectivamente, la deposición ocurrió, pero únicamente en la presencia del abogado de la defensa. En el juicio, la defensa objetó la grabación y alegó que la presencia del acusado en la deposición era parte del derecho a la confrontación.

Al analizar la antigua Regla 64 de las de Evidencia, similar a la actual y fundamentado en la jurisprudencia federal, este Tribunal indicó por primera vez que no se "satisface la exigencia constitucional de confrontación **'a menos que el Ministerio Público haya realizado un esfuerzo de buena fe para conseguir su presencia en el juicio'**". (Énfasis suplido) Pueblo v. Ruiz Lebrón, supra, pág. 447 (citando a Barber v. Page, 390 U.S. 719, 724-725 (1968)). Sin embargo, en ese caso, concluimos que el Ministerio

Público logró probar la no disponibilidad del testigo, debido a que la defensa suspendió el juicio sabiendo la indisponibilidad del testigo y éste participó en la deposición.

Por otro lado, en Pueblo v. Pellot Pérez, 121 DPR 791 (1988), el testigo de la vista preliminar no compareció al juicio. El tribunal ordenó a los alguaciles gestionar el arresto. Al no lograr encontrarlo, el Ministerio Público ofreció como prueba la declaración del testigo por voz del fiscal que había estado en la vista preliminar, y el tribunal lo permitió. El acusado alegó que el Ministerio Público no demostró que desplegó las diligencias necesarias para conseguir la comparecencia del testigo.

Ante ese cuadro, en aquel momento, concluimos que quedó demostrado que la comparecencia del testigo no se pudo lograr por medio de una **citación del tribunal u otros medios razonables** y que se habían hecho esfuerzos de buena fe para lograr la comparecencia. A su vez, el Ministerio Público presentó prueba sobre las gestiones infructuosas realizadas por la Policía y los alguaciles.

Asimismo, en el contexto civil, también hemos reconocido la responsabilidad del proponente de demostrar la indisponibilidad de un testigo con las debidas diligencias para su comparecencia. En Nieves López v. Rexach Bonet, 124 DPR 427 (1989), este Tribunal negó reconocer que se habían hecho las debidas diligencias para probar la indisponibilidad del testigo. En el caso, una

demandada no pudo ser localizada, y por tal razón, el demandante utilizó en el juicio una expresión que ella le hizo después de un choque. La expresión fue debidamente objetada por constituir prueba de referencia. El foro primario dictaminó que no se habían hecho las debidas diligencias para que ésta compareciera. Este Tribunal confirmó, pues entendió que el demandante no hizo las debidas gestiones, ya que no le solicitó a la demandada la licencia de conducir ni anotó la tablilla del automóvil.

Por último, en Rivera Jiménez v. Garrido & Co., Inc., 134 DPR 840 (1993), el foro primario se negó a admitir una deposición de un policía tras un accidente. En ella había declaraciones de un testigo codemandado. Este Tribunal revocó, dado que entendió que se logró demostrar que las diligencias del Estado para intentar localizar al testigo fueron razonables y adecuadas. Particularmente, se presentó una declaración jurada que establecía que la hermana del testigo **no sabía en qué lugar en específico de los Estados Unidos estaba el testigo.**

**IV**

**A.**

Teniendo en mente el derecho constitucional a la confrontación, procede examinar los pronunciamientos del Tribunal Supremo federal en cuanto a los requisitos para poder demostrar la no disponibilidad del testigo. Esta jurisprudencia es normativa en nuestra jurisdicción dado que la Cláusula de Confrontación reconocida en la Enmienda

Sexta aplica a los estados. Pointer v. Texas, 380 US 400, 403-406 (1965). Así lo hemos observado en este Tribunal. Pueblo v. Guerrido López, supra, pág. 962. Asimismo, esas determinaciones constituyen el mínimo de protección que estamos obligados a reconocer. Íd., pág. 963. Nótese, además, que las Reglas de Evidencia federal contienen una disposición similar a la nuestra. Véase, Fed. R. Evid. 804.[7]

---

[7]La Regla 804 (a) de Evidencia federal dispone de la manera siguiente:

> **(a) Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:
>
> . . . .
>
> > **(5)** is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
> >
> > > **(A)** the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
> > >
> > > **(B)** the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4). Fed. R. Evid. 804.

Como bien señala el Primer Examen de las Reglas de Evidencia de 1979, la Regla 804 federal es mucho más rigurosa que su homóloga en Puerto Rico. Se exige en algunas instancias haber tomado una deposición. Por otro lado, la Regla 804 federal expresamente exige, además de que se haya emitido un subpoena, que se procure su asistencia por otros medios razonables. A pesar de que las Reglas de Evidencia de Puerto Rico no lo exige expresamente, cuando proceda el derecho a la confrontación se exige un procedimiento o estándar igualmente riguroso. Conferencia Judicial, Decimotercera Sesión Plenaria, Tribunal Supremo, Primer examen de las Reglas de Evidencia de 1979: Comentarios y Recomendaciones, 1986, pág. 398.

En Barber v. Page, supra, fue la primera ocasión que el Tribunal Supremo de los Estados Unidos interpretó la excepción de la prueba de referencia del testigo no disponible. Particularmente, analizó los requisitos que deberán probarse para establecer que el testigo está ausente de la vista. En esa ocasión, el testigo estaba encarcelado en una prisión federal en otro estado, por lo que el Ministerio Público solicitó que se admitiera el testimonio del testigo realizado en la vista preliminar, ya que no estaba en su jurisdicción. Al revocar, el foro supremo federal dispuso que "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement **unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial**". (Énfasis suplido). Íd., págs. 724-725. Por lo cual, concluyó que, en ese caso, el Estado no cumplió con tal requisito al no haber realizado algún tipo de esfuerzo para obtener la comparecencia del testigo.

Cabe resaltar que el Tribunal Supremo federal tomó conocimiento que varios tribunales habían asumido que la mera ausencia del testigo en la jurisdicción era base suficiente para declarar su indisponibilidad. No obstante, sobre esa teoría aclaró y dispuso que "it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law". Barber v. Page, supra, pág.

723. De esa forma, negó que el derecho a la confrontación pudiera cumplirse tan livianamente. Íd., pág. 725. Por último, expresó que en los supuestos cuando un testigo no está encarcelado, la Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings permite que un estado procure que la corte de otro estado ordene al testigo a comparecer en el estado solicitante. Íd., esc. 4.[8]

Al año siguiente, el Tribunal Supremo federal resolvió Berger v. California, 393 U.S. 314 (1969), en el cual se concluyó que Barber v. Page, supra, era retroactivo. Allí, además, se indicó que "the absence of a witness from the

---

[8]La Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings fue adoptada por The National Conference of Commissioners on Uniform State Laws. Ésta fue aprobada por la mayoría de los estados, incluyendo a Puerto Rico. Ella "establece un mecanismo para obtener una orden judicial del estado donde reside un testigo y compelerlo a testificar". Pueblo v. Rosario Allende, 135 DPR 357, 358 (1994). Como bien dispusimos, "[a] menos que exista un acuerdo o convenio, ningún estado puede obligar a un no residente a comparecer así". Íd. pág. 360. El proceso es simple:

> La ley es aplicable sólo entre dos estados que la hayan adoptado. El primer paso que se ha de tomar es solicitar del juez en el Estado en que se llevará a cabo el juicio (*demanding state*) una certificación que, entre otros hechos, establezca que el testigo es uno material en un proceso pendiente en una corte de récord en ese Estado. Esta certificación se remite a un juez de una corte de récord en el estado en que se encuentra el testigo (*requested state*). Este juez, luego de una vista, emite las órdenes apropiadas. Íd. pág. 358, esc. 2 (citando a Uniform Act to Secure Attendance of Witnesses from Whiout a State in Criminal Proceeding, 44 A.L.R.2d. 732, 733 (1955)).

jurisdiction would not justify the use at trial of preliminary hearing testimony unless the State had made a good-faith effort to secure the witness' presence". Berger v. California, supra, pág. 315. Comentarios de tratadistas a esa jurisprudencia interpretan que en ese caso se sugiere que el Estado no podrá establecer buena fe a menos que agote todos los procedimientos obligatorios estatuidos o demuestre que son fútiles. E.J. Imwinkelried y otros, Courtroom Criminal Evidence, 5ta ed., LexisNexis, 2011, Vol. I, sec. 1303, págs. 13-5 – 13-6.

Casi cuatro años más tarde se resolvió Mancusi v. Stubbs, 408 U.S. 204 (1972). En ese caso, el testigo, después de testificar en el primer juicio, se había mudado a Suecia. El Estado trató de conseguirlo en la última dirección en los Estados Unidos, pero resultó infructuoso. El hijo del testigo confirmó la mudanza de su padre. Así pues, el tribunal decidió admitir el testimonio anterior del testigo que fue realizado en el primer juicio. No obstante, el Tribunal de Apelaciones para el Segundo Circuito revocó. A eso, el máximo foro federal atendió y reafirmó lo dicho en Barber v. Page, supra. Empero, distinguió ambos casos en que en Mancusi v. Stubbs, supra, el testigo no estaba meramente ausente del estado, sino que vivía de forma permanente en otro país. De esa forma, al revocar, reconoció las limitaciones de los estados cuando se trata de un testigo que se mudó a otro país. Por esa

razón, sostuvo que los estados dependerán de la asistencia voluntaria del gobierno del otro país.[9]

Tiempo después, y hace más de tres décadas, en el famoso caso de Ohio v. Roberts, 448 U.S. 56 (1980),[10] el Tribunal Supremo federal volvió a atender la constitucionalidad de las diligencias del Estado para declarar un testigo no disponible. En esa ocasión, la testigo, después de la vista preliminar, se fue del estado de Ohio. En la vista para determinar su indisponibilidad, su madre testificó que no sabía a dónde se había ido. Incluso, que cuando la hija la llamó, le dijo que estaría viajando fuera del estado.

Ante esos hechos, el máximo foro de los Estados Unidos resolvió que la testigo era una no disponible. Concluyó que el Estado había hecho esfuerzos de buena fe para localizarla, debido a que era casi imposible que esfuerzos adicionales resultaran en localizar efectivamente a la testigo. En la decisión tuvo mucho peso que los padres tenían gran interés y preocupación por el paradero de su hija y ellos no sabían de ella, incluso a pesar de que

---

[9]Se ha reconocido que, a pesar de que un testigo viva o esté en una nación extranjera, los tribunales deben analizar si se ha hecho algún esfuerzo para obtener la comparecencia del testigo. C.A. Wright y J. Bellin, Federal Practice and Procedure: Evidence, Thomson Reuters, 2017, V. 30B, sec. 6968, pág. 508. Incluso, se exige que se solicite la extradición o algún otro proceso estatuido para permitir la comparecencia del testigo. Íd., pág. 509; U.S. v. Curbello, 940 F.2d. 1503, 1506 (11mo Cir. 1991).

[10]Revocado en otros extremos no aplicables a la controversia ante nos por Crawford v. Washington, 541 U.S. 36 (2004).

realizaban esfuerzos razonables para conseguirla. Además, el tribunal dispuso que, a diferencia de Mancusi v. Stubbs, supra, **en esa ocasión no había indicios claros, si alguno, del paradero de la testigo**. A su vez, en comparación con Barber v. Page, supra, **el paradero era desconocido** y nada aseguraba que de ser encontrada pudiera ser forzada a regresar a Ohio.

Para tomar la decisión, el Tribunal expresó que no se requiere que el Estado haga actos inútiles. Por lo tanto, si no existe la posibilidad de obtener la comparecencia del testigo, la "buena fe" no exige acto alguno por parte del Estado. Sin embargo, expresó que "**if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith *may* demand their effectuation**". (Énfasis suplido). Ohio v. Roberts, supra, pág. 74. Por lo cual, determinó que la pregunta que los tribunales deben contestar es si el testigo no está disponible a pesar de los esfuerzos de buena fe realizados antes del juicio para ubicar y presentar a ese testigo. Le toca a la parte proponente, en ese caso al Ministerio Público, establecer la carga probatoria. Íd., págs. 74-75; Véase, además, Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., pág. 721.

Por último, en esta década se resolvió Hardy v. Cross, 565 U.S. 65 (2011) (Per curiam). En ese caso, la testigo y víctima que declaró en un primer juicio no pudo ser localizada para el segundo juicio. El Estado informó que

después del juicio estuvo en contacto con la testigo y que todo apuntaba a que testificaría. Sin embargo, tiempo después la familia le indicó que desconocía dónde estaba y que se encontraba muy temerosa y preocupada de testificar. Entre las diligencias realizadas por el Estado estuvieron las siguientes: visitas constantes a su casa en diferentes horarios; conversaciones personales y telefónicas con familiares; verificaron en la oficina médica de la ciudad y hospitales; verificaron las prisiones; verificaron la escuela de la testigo; verificaron con familiares de un exnovio; verificaron con la oficina del Secretario de Estado de Illinois; verificaron en el departamento de ayuda social; verificaron en el departamento de salud; verificaron en la morgue; verificaron en el correo postal, y verificaron en el departamento de inmigración. Incluso, las **investigaciones continuaron hasta el día de la vista**.

Al resolver que la testigo no estaba disponible, el Tribunal Supremo federal reiteró la jurisprudencia antes reseñada. Asimismo, destacó que en ese caso no era necesario realizar esfuerzos a los cuales los familiares no hicieron referencia. No obstante, mencionó que cuando un testigo desaparece antes del juicio, siempre es posible pensar en pasos adicionales que el Ministerio Público puede tomar para asegurar la presencia del testigo. Sin embargo, destacó que la Sexta Enmienda no requiere que el Ministerio Público agote cada posibilidad de investigación, sin

importar cuán poco prometedor sea. Hardy v. Cross, supra, pág. 495.

**B.**

Ante ese cuadro, tanto los diferentes tribunales apelativos federales, los tribunales supremos de otros estados, así como los tratadistas han tenido la oportunidad de examinar la normativa expuesta en el contexto de diversas controversias que arrojan luz a la que nos ocupa. Al examinarla, podemos constatar la rigurosidad que debe mediar en la determinación de no disponibilidad de un testigo en los pleitos penales. Veamos.

De ordinario, la no disponibilidad del testigo se debe probar mediante los procesos estatuidos, entre ellos están los subpoenas o citación al tribunal. Si el testigo no se puede localizar, entonces el proponente de la declaración debe establecerlo demostrando esfuerzos sustanciales o de buena fe. McCormick on Evidence, op. cit., págs. 248-249. El estándar aplicable es uno de diligencia y razonabilidad. Íd., pág. 250; Vélez Rodríguez, op. cit., pág. 250. Por ello, al momento de probar las diligencias realizadas, se deben demostrar con especificidad los esfuerzos razonables realizados y que éstos fueron infructuosos. Wright y Bellin, op. cit., sec. 6968, pág. 507.[11] Asimismo, el

_____

[11]Esos esfuerzos sustanciales y de buena fe incluyen el demostrar que se trató de localizar, de rastrear y de citar al testigo. Fishman, op. cit. ("'Other reasonable means' requires the offering party to show that a reasonable effort has been made to locate, track down, and subpoena a declarant

proponente de la declaración deberá actuar de buena fe y de una manera competente. Íd.; U.S. v. Yida, 498 F.3d 945, 952 (9no Cir. 2007). Se ha señalado que, en esas ocasiones, el Estado deberá demostrar que la búsqueda del testigo fue tan rigurosa como si tuviera que buscar a un testigo esencial sin tener el beneficio del testimonio anterior que pretende presentar. Fishman, op. cit., pág. 430; U.S. v. Lynch, 499 F.2d 1011, 1023 (D.C. Cir. 1974).

Así pues, se ha expresado que se considerará esfuerzos razonables actos como tratar de contactar al testigo a alguna dirección conocida o asociada, incluyendo familiares, y la utilización de subpoenas. Wright y Bellin, op. cit., sec. 6968, pág. 507. También, es altamente sugerido que se deben consultar fuentes de información como el lugar de trabajo, las compañías de bienestar social, el correo postal y las agencias de servicios sociales. A su vez, en la era moderna que vivimos, se pueden examinar las redes sociales y los recursos del internet para tratar de conseguir su localización. Imwinkelried, op. cit., sec. 1304, pág. 13-10.[12] Por lo tanto, el simple hecho de

---

who is missing or who may be deliberately evading being served").

[12]Véanse, por ejemplos, U.S. v. Flenoid, 949 F.2d 970, 972-973 (8vo Cir. 1991) (En este caso se hicieron diligencias como buscar en su última dirección y lugar de trabajo, verificar su reporte de crédito para obtener su más reciente dirección y los servicios que obtuvo.); U.S. v. Berry, 808 F.2d 836 (4to Cir. 1986) (disposición no publicada) (El tribunal confirmó la no disponibilidad del testigo dado que no se logró encontrar a pesar de los esfuerzos por parte del Estado. En ese caso, el gobierno

preguntarle al testigo si comparecerá no equivale a un método adecuado para procurar la comparecencia del testigo. Wright y Bellin, op. cit., sec. 6968, pág. 507. Específicamente, en casos criminales, se ha interpretado que el Estado tiene la responsabilidad de mantener contacto con los testigos después que sea evidente que el testimonio será necesario en el juicio y deberá realizar los arreglos pertinentes para obtener la presencia del testigo cuando la fecha del juicio sea calendarizada. Para ello, como se mencionó, el Ministerio Público deberá desplegar la debida diligencia. Imwinkelried, op. cit., págs. 13-9 - 13-10.

Sólo se excusará de llevar a cabo esfuerzo cuando no haya probabilidad de obtener la comparecencia, es decir, cuando la probabilidad sea casi cero o fútil. U.S. v. Aguilar-Tamayo, 300 F.3d 562, 565 (5to Cir. 2002); U.S. v. Winn, 767 F.2d 527, 530 (9no Cir. 1985); Wright y Bellin, op. cit., pág. 509; Louisell y Mueller, op. cit., pág. 1067.[13] En contraste, cuando sí haya alguna posibilidad real, las partes deben realizar esfuerzos a esos efectos. U.S. v. Aguila-Tamayo, supra, pág. 566. Wright y Bellin, op. cit., pág. 509. El consenso es que el proponente de la

estatal hizo esfuerzo para localizarlo; agentes del FBI verificaron los registros de los vehículos de motor y de crédito del testigo, hablaron con sus padres y vigilaron su área de residencia, entre otros.).

[13]Se podría considerar que una probabilidad es fútil cuando no se conoce la identidad o la dirección del testigo y no puede ser **razonablemente descubierta**. Wright y Bellin, op. cit., pág. 509.

declaración debe agotar todos los procesos, excepto que demuestre que alguna medida sea fútil. Imwinkelried, op. cit., sec. 1303, pág. 13-7.

Además, ese estándar de buena fe y razonabilidad requiere que se procure la comparecencia del testigo dentro de un tiempo razonable. Véanse, Jackson v. Brown, 513 F.3d 1057, 1084 (9no Cir. 2008) (El tribunal determinó que el Estado no hizo esfuerzos de buena fe para contactar a un testigo. El investigador no había hecho gestión alguna por casi dos meses, semanas antes del juicio. Concluyó que la Enmienda Sexta requiere esfuerzos de buena fe antes del juicio.); U.S. v. Quinn, 901 F.2d 522, 527-528 (6to Cir. 1990) (El tribunal determinó que el Ministerio Público no fue diligente al no entregarle al oficial el subpoena en un tiempo razonable); U.S. Puckett, 692 F.2d 663, 670 (10mo Cir. 1982) (El tribunal determinó que se tardaron en citar al testigo a sólo dos semanas antes del juicio, por lo que no era un testigo no disponible.).

A causa de lo antes mencionado, los tribunales tienen la responsabilidad de evaluar si quien ofrece la declaración llevó a cabo los esfuerzos razonables para asegurar la presencia del testigo. Fishman, op. cit., pág. 429. Es decir, deberán examinar si se han hecho esfuerzos de naturaleza bona fide.[14] Por el contrario, si el

---

[14]Sobre los factores a considerar para determinar la razonabilidad de los hechos realizados, el Profesor Vélez Rodríguez expone lo siguiente:

proponente no ha tratado seriamente de obtener la presencia del testigo, la excepción a la prueba de referencia basada en la no disponibilidad del testigo no debe estar viable para esa parte. Wright y Bellin, op. cit., sec. 6968, pág. 507. El examen a realizar por los tribunales debe ser uno extremadamente riguroso. R. Emmanuelli Jiménez, Prontuario Derecho Probatorio Puertorriqueño, San Juan, 4ta ed., Eds. SITUM, 2015, pág. 542; E.L. Chiesa Aponte, Práctica Procesal Puertorriqueña: Evidencia, San Juan, Publicaciones JTS Inc., supl. 1988, pág. 76.

Esta línea jurisprudencial federal, en la cual se requiere buena fe y razonabilidad por parte del proponente, se debe examinar caso a caso y no de forma rígida. Wright y Bellin, op. cit., pág. 508; U.S. v. Tirado-Tirado, 563 F.3d 117, 123 (5to Cir. 2009);[15] Christian v. Rhode, 41 F.3d

---

En términos de determinar la razonabilidad de las gestiones del Ministerio Público, la doctrina ha considerado factores tales como el control que tuvo el Estado respecto a la persona declarante, los mecanismos de citación disponibles para la citación, la viabilidad del ejercicio de jurisdicción in personam sobre el declarante, el carácter esencial del testimonio, tales como la deposición... si el Estado permitió al declarante abandonar la jurisdicción y si, posteriormente a ello, realizó gestiones encaminadas a lograr su comparecencia. E. Vélez Rodríguez, La prueba de referencia y sus excepciones, San Juan, 2010, InterJuris, pág. 251.

[15]En U.S. v. Tirado-Tirado, 563 F.3d 117, 123 (5to Cir. 2009), el tribunal determinó lo siguiente:

"Because of the importance our constitutional tradition attaches to a defendant's right to confrontation, the 'good faith effort' requirement demands much more than a merely perfunctory effort

461, 467 (9no Cir. 1994). Los tribunales deberán examinar la dificultad para procurar el testigo y las circunstancias del caso. Wright y Bellin, op. cit., pág. 508.[16] Incluso, algunos tribunales han enfatizado en analizar la importancia del testigo en el caso. U.S. v. Johnson, 108 F.3d 919, 922 (8vo Cir. 1997) ("The question of reasonable means cannot be divorced from the significance of the witness to the proceeding at hand, the reliability of the former testimony, and whether there is reason to believe that the opposing party's prior cross exam was inadequate".). Con ello concuerdan Louisell y Mueller al exponer que el análisis de razonabilidad de las medidas que debió haber tomado el Estado para asegurar la comparecencia del testigo debe ser en función de la importancia previsible del testimonio del testigo en el juicio, su naturaleza y el grado de riesgo de que desaparezca. Louisell y Mueller, op. cit., págs. 1060-1061.

**V**

---

by the government," but "[t]he inevitable question of precisely how much effort is required on the part of the government to reach the level of a 'good faith' and 'reasonable' effort eludes absolute resolution applicable to all cases". United States v. Allie, 978 F.2d 1401, 1406, 1408 (5th Cir. 1992).

[16]Para demostrar la ausencia del testigo, las respuestas recibidas durante la búsqueda deben ser admisibles. Ello servirá de prueba de las debidas diligencias de la búsqueda del testigo. J.H. Wigmore, Evidence in Trial at Common Law, Boston, 1974, Vol. V, sec. 1414, pág. 238.

Más allá de la jurisprudencia antes expuesta, este Tribunal y el Tribunal Supremo de los Estados Unidos no han tenido la oportunidad de examinar los parámetros particulares para demostrar la indisponibilidad de un testigo cuando el Ministerio Público conoce que está en otro estado de los Estados Unidos y no particularmente en una prisión. No obstante lo anterior, distintos tribunales estatales y federales se ha enfrentado a esa controversia.

Como vimos, anteriormente los tribunales establecieron de forma general que el mero hecho de que el testigo estuviera fuera de la jurisdicción lo hacía uno no disponible. Sin embargo, en tiempos modernos se exigen diligencias de mayor peso que tiendan a demostrar la no disponibilidad de un testigo. Imwinkelried, op. cit., pág. 13-5. Incluso, se ha establecido que esa primera teoría es obsoleta. Louisell y Mueller, op. cit., pág. 1052; J.H. Wigmore, Evidence in Trial at Common Law, Boston, 1974, Vol. V, sec. 1404, pág. 211. Véase, además, Barber v. Page, supra, pág. 723. De esa forma, algunos tribunales han tomado en consideración el hecho de que el testigo esté fuera del alcance de los procesos de la corte como un factor a considerar para determinar la disponibilidad. Véase, U.S. v. Terrazas-Montano, 747 F.2d 467 (8vo Cir. 1984). Empero, otros tribunales exponen que incluso si el testigo está fuera de la jurisdicción del tribunal, el proponente de la declaración debe hacer esfuerzos diligentes para procurar

la asistencia.[17] Wright y Bellin, op. cit., sec. 6968, pág. 507; J.B. Weinstein y M.A. Berger, Weinstein's Federal Evidence, 2da ed., LexisNexis, 2018, Vol. V, sec. 804.03[6][b][i], pág. 804-18.[18]

_____

[17]Véanse, por ejemplo, People v. Herrera, 232 P.3d 710 (Cal. 2010) (El tribunal determinó que fue suficiente que el Estado buscara un investigador estatal para que contactara a la INTERPOL en El Salvador.); U.S. v. Ozsusamlar, 349 Fed. Appx. 610 (2do Cir. 2009) (no publicada) (El tribunal determinó que se habían hecho esfuerzos de buena fe, dado que al Estado conocer que el testigo no estaba en los Estados Unidos, sino en Turquía, contactó a la oficina legal del FBI en ese país para pedir ayuda.); U.S. v. Pena-Gutierrez, 222 F.3d 1080 (9no Cir. 2000) (Se tenía conocimiento de la dirección del testigo en México y no lo contactaron. El tribunal resolvió que el Estado no demostró tener razón para creer que el testigo no respondería al requerimiento de volver a los Estados Unidos para testificar.); Rice v. Janovich, 742 P.2d 1230, 1236 (Wash. 1987) (El tribunal concluyó que el hecho de que una persona esté fuera de la jurisdicción y sea difícil de citar no es suficiente para declarar al testigo no disponible. Es necesario esfuerzos razonables para obtener la asistencia del testigo.); Williams v. Collins Communications, Inc., 720 P. 2d 880, 889 (Wyo. 1986) (El tribunal reafirmó que la ausencia de un testigo de la jurisdicción, sin ningún otro esfuerzo, no es suficiente para demostrar la indisponibilidad.); U.S. v. Rothbart, 653 F.2d 462 (10mo Cir. 1981) (El tribunal dispuso que un testigo no es uno no disponible por el simple hecho de estar fuera de la jurisdicción de la corte. En ese caso, el Estado tomó una deposición a pesar que podía procurar la comparecencia del testigo por medio del subpoena que había efectuado.); Government of the Canal Zone v. P. (Pinto), 590 F.2d 1344 (5to Cir. 1979) (El tribunal determinó que no había indisponibilidad del testigo debido a que lo único que alegó el Estado fue que los testigos habían salido de la Zona del Canal.); Janich Bros., Inc. v. American Distilling Co., 570 F.2d 848, 859 (9no Cir. 1977) (El tribunal negó la alegación de que estar fuera de la jurisdicción establece la indisponibilidad del testigo. Al contrario, señaló que debe haber esfuerzos diligentes para procurar la presencia del testigo.).

[18]Cuando el testigo está fuera del alcance de los procesos, más allá de estar en prisión como ocurrió en Barber v. Page, 390 U.S. 719 (1968), lo mínimo que se puede hacer para cumplir con el derecho a la confrontación es pedir la comparecencia y ofrecerle, dentro de las circunstancias, el

Uno de ellos fue en U.S. v. Mann, 590 F.2d 361 (1er Cir. 1978). En esa ocasión, a la testigo se le tomó una deposición, pero al momento del juicio el Ministerio Público quiso presentar en evidencia la misma, ya que la testigo no estaba en Puerto Rico. El Tribunal de Apelaciones para el Primer Circuito determinó que el Ministerio Público no logró demostrar que la testigo era una no disponible. Enfatizó que la declarante era de suma importancia en el caso, debido a que éste dependía casi en su totalidad de su testimonio. Sin embargo, el Estado no hizo nada para mantener la testigo bajo su custodia, como proveer un lugar de alojamiento o quitándole su pasaporte. Tampoco la citó por medio de un subpoena. De esa forma, el Tribunal entendió que la deposición se hizo con el fin de que la testigo se fuera de la jurisdicción.

Sobre las medidas a realizar por el Ministerio Público para demostrar la no disponibilidad del testigo, se indicó lo siguiente:

> Courts have consistently held that, pursuant to Rule 804(a)(5), the proponent must show at least a good faith effort to procure the witness' attendance. **Even where the absent witness is beyond the court's jurisdiction, "the government must show diligent effort on its part to secure the (witness') voluntary return to testify."** (Énfasis suplido). Government of the Virgin Islands v. Aquino, 378 F.2d 540, 551 (3d Cir. 1967). Furthermore, the effort must be "genuine and bona fide". Id. at 552. U.S. v. Mann, supra, pág. 367.

_____

pagarle el viaje y los gastos en que incurra el testigo. McCormick on Evidence (K.S. Broun ed.), 7ma ed., Thompson Reuters, 2013, V. II, sec. 253, pág. 250.

Al final, el Tribunal dispuso que la testigo era vital para el caso. Sin embargo, el Estado no había realizado gestiones suficientes para asegurar la presencia, como si el testimonio anterior no existiera. Por ende, concluyó que los requerimientos de buena fe no pueden ser satisfechos con esfuerzos superficiales.

En cuanto a las diligencias para procurar la comparecencia de un testigo, del cual se tiene conocimiento de su paradero en otro estado de los Estados Unidos, en U.S. v. Harbin, 112 F.3d 974 (8vo Cir. 1997), el tribunal concluyó que el testigo no era uno indisponible, ya que el Ministerio Público no logró demostrar con esfuerzos de buena fe la indisponibilidad. Particularmente, en el caso llevado a cabo en Arkansas, se tenía conocimiento de que la testigo estaba viviendo en Mississippi. El tribunal razonó que no se presentó prueba de que el Estado haya buscado en Mississippi o cada cierto tiempo a su casa en Arkansas cuando iba a visitar a su madre.[19]

---

[19]Compare con U.S. v. Acevedo-Ramos, 842 F.2d 5 (1ro Cir. 1988) en el cual el tribunal declaró al testigo como uno no disponible debido a que a pesar de que el Ministerio Público lo localizó, el estado de Massachusetts no permitió el traslado del testigo, ya que estaba encarcelado esperando para ser enjuiciado. Se concluyó que el Estado hizo diligencias de buena fe para obtener la comparecencia. Igual situación ocurrió en U.S. v. Casamento, 887 F.2d 1141 (2do Cir. 1989) pero con el gobierno de Italia. Véase, también, Mechler v. Procunier, 754 F.2d 1294 (5to Cir. 1985) (El tribunal declaró a la testigo como una no disponible. El Estado demostró que hizo esfuerzos razonables en Texas, lugar en el cual se llevaba a cabo el juicio, y en Illinois, estado donde la testigo indicó que se había mudado.).

De otra parte, en Mitchell v. State, 572 So.2d 865

(Miss. 1990), el tribunal confirmó la indisponibilidad de

la testigo. Se fundamentó en que la policía contactó al

FBI, a la policía del estado en el cual se creía que la

testigo se había mudado y al departamento de ayuda social,

entre otros. Señaló que la mera ausencia en el estado del

juicio no es suficiente para determinar la

indisponibilidad.[20]

---

[20]Véanse, además, State v. Montano, 65 P.3d 61, 69 (Ariz. 2003) ("Moving from one state to another cannot be the sole basis for unavailability of a witness; good faith efforts to locate him or her are still required".); Crochiere v. Board of Educ. ff Town of Enfield, 630 A.2d 1027, 1040 (Conn. 1993) ("A witness residing in another state is not unavailable for that reason alone".); State v. Edwards, 665 P.2d 59, 64 (Ariz. 1983) ("The fact that a witness has possibly left the jurisdiction does not result in the automatic finding of unavailability. In situations where there is evidence that the witness has left the jurisdiction, the State must continue to use diligent efforts to locate the witness. As with the service of in-state subpoenas, a good-faith effort would ordinarily require the State to utilize the Uniform Act to secure the Attendance of Witnesses from Without a State in Criminal Proceedings, A.R.S. §§ 13-4091 to -4096, unless to do so would be futile". (citas omitidas)); State v. Kim, 519 P.2d 1241, 1244 (Haw. 1974) ("Establishing that a witness has a forwarding address in another state at best only tends to prove the witness's absence from Hawaii. The state must show a good faith effort to ascertain the actual location of the witness, and thereafter, if necessary, to attempt to compel the witness's attendance at trial through use of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Unless the state can show a good faith attempt to use this statute to assure attendance of the witness, the state may not introduce the pre-trial testimony of the absent witness". (cita omitida)); J.C. Latimer, Confrontation After Crawford: The Decision's

Distinto a los casos anteriores es cuando no se tiene conocimiento de la dirección o de cualquier otra información que pueda dar con el paradero del testigo. En esas circunstancias, es razonable que el Estado no deba realizar otros esfuerzos adicionales. U.S. v. Winn, supra, pág. 530. No obstante, el proponente de la declaración debe demostrar que su falta de conocimiento del paradero del testigo no se debe a la falta de esfuerzos para descubrirlo. Para ello debe probar que hizo una búsqueda honesta y diligente. Wigmore, op. cit., 1972, Vol. IV, sec. 1313, pág. 747. Para concluir que un testigo está desaparecido se requiere demostrar la inhabilidad del proponente de encontrarlo, a pesar de una búsqueda diligente. Íd., Vol. V, sec. 1405, pág. 215.

Además, el Profesor Chiesa Aponte, analizando todo lo anterior, nos destaca lo siguiente:

> Claramente no basta diligenciar una citación (subpoena), pero tampoco puede exigírsele al gobierno que siga insistiendo cuando dar con el testigo parece muy improbable. Nada puede hacer el gobierno para obligar a comparecer al extranjero que se halla fuera de los Estados Unidos, salvo que fuera posible la extradición. Si se trata de un ciudadano americano que reside permanentemente en el extranjero, habrá que examinar el poder del gobierno para lograr la comparecencia del testigo. El gobierno debe, **en fin tomar todas las medidas razonables para que el testigo (declarante) no abandone la jurisdicción o para que regrese si se ha marchado. El criterio rector será la razonabilidad de las medidas tomadas por el gobierno para lograr la comparecencia del**

---

Impact on How Hearsay Is Analyzed Under the Confrontation Clause, 36 Seton Hall L. Rev. 327, 350-351 (2006).

**declarante**. (Énfasis suplido). Chiesa Aponte, <u>Tratado de derecho probatorio</u>, <u>op. cit.</u>, pág. 730.

Además, en su discusión de <u>U.S. v. Mann</u>, supra, expresó lo siguiente:

> [E]n el deber de usar todo medio razonable para asegurar la comparecencia del testigo en el juicio está implícito el **deber de usar todo medio disponible para evitar que un testigo se ausente antes del juicio**. Es decir, cuando el testigo está fuera de la jurisdicción, debe hacerse todo lo posible para traerlo el día del juicio; cuando está dentro de la jurisdicción, debe hacerse todo lo posible para evitar que se ausente. (Énfasis suplido). Chiesa Aponte, <u>Práctica Procesal Puertorriqueña: Evidencia</u>, <u>op. cit.</u>, pág. 338. <u>Véanse</u>, además, <u>U.S. v. Tirado-Tirado</u>, supra, págs. 124-125; <u>U.S. v. Allie</u>, 978 F.2d 1401, 1407 (5to Cir. 1992).

En consideración al marco jurídico enunciado, veamos su aplicación.

## VI

La controversia en este caso se reducía a resolver si el Ministerio Público logró probar la indisponibilidad del testigo de cargo. El señor Ruiz alega que el Estado no hizo las debidas diligencias ni se utilizaron los medios razonables para localizar al señor Caraballo. De esa forma, arguye que se le violó su derecho a la confrontación. Específicamente, sostiene que el Ministerio Público tenía conocimiento que el testigo está en los Estados Unidos, posiblemente en los estados de Connecticut o New Jersey, y no realizó esfuerzos de buena fe en esas localidades.

Asimismo, cuestiona que no se hayan realizado gestiones hace más de un año, es decir, en un tiempo razonable.

Por su parte, el Ministerio Público argumenta, en esencia, que los testigos presentados en la vista evidenciaria demostraron la indisponibilidad del señor Caraballo. A su vez, señala que la jurisprudencia federal es determinante en cuanto a que no es necesario hacer gestiones adicionales ante escasas probabilidades de lograr su comparecencia cuando el testigo se niega a testificar. Así, explica que el señor Caraballo se niega a testificar y, ante amenazas a su seguridad, decidió mudarse a los Estados Unidos. Por lo que argumenta que realizar gestiones adicionales tendría gran improbabilidad de éxito. Es decir, sostiene que demás gestiones serían inútiles y costosas.

Luego de examinar los escritos de las partes, concluyo que le asiste la razón al peticionario. Ante la totalidad de las circunstancias, el Ministerio Público no logró demostrar la indisponibilidad del testigo, a saber: las diligencias para lograr la comparecencia del testigo se centraron en Puerto Rico cuando se tenía conocimiento que el testigo había abandonado la jurisdicción hacia los Estados Unidos; no se realizaron gestiones de búsqueda en los posibles estados en los que se podía encontrar el testigo; transcurrieron más de seis meses en los que el Estado no realizó diligencia alguna dirigida a dar con el paradero del testigo; se trataba del único testigo presencial de los hechos; y el Estado no logró retenerlo

en la jurisdicción y ofrecerle la protección que requería, en cuyo caso, debió ejercer diligencias para mantener la ubicación o, como mínimo, dar con su paradero. De ese modo, el Estado debió haber realizado diligencias razonables y de buena fe para tratar de compeler al testigo a comparecer a la vista. Según la jurisprudencia federal, es requisito indispensable para probar la indisponibilidad del testigo que el Estado haya realizado esfuerzos de buena fe para obtener su comparecencia en el juicio, lo que significa el haber tratado de localizar, rastrear y citar al testigo.

Como mencioné, en el caso de autos eso no ocurrió. A pesar de que el Ministerio Público sí realizó varias gestiones, éstas no cumplieron con el rigor exigido por el derecho constitucional a la confrontación. Entre las diligencias realizadas están las siguientes: subpoenas a diferentes agencias gubernamentales en Puerto Rico; varias visitas a la casa del tío del testigo; visita a la casa de la abuela; el agente Montañez se comunicó con su supervisor, quien le expresó que había hecho gestiones con un agente federal que conocía. No obstante, estas gestiones demostraron que posiblemente el testigo no estaba en Puerto Rico, como bien señaló el tío del testigo. Por tanto, al descartar la presencia del testigo en nuestra jurisdicción y al tener información de dos estados en específico de los Estados Unidos, la buena fe requería que se hicieran gestiones en esos estados conducentes a localizar al señor Caraballo.

Así pues, el Ministerio Público debió haber realizado toda medida razonablemente posible y de esa forma demostrar que, aun así, no fue posible lograr la comparecencia del señor Caraballo. Como bien dispuso el Tribunal Supremo federal en Ohio v. Roberts, supra, si existe una posibilidad, aunque sea remota, que la medida a tomar hará que el testigo comparezca, la obligación de la buena fe puede requerir que se realice. Precisamente, en el caso ante nos sí existe un posible indicio del paradero del testigo. Por tanto, lo que procedía era que se hicieran gestiones con las entidades gubernamentales correspondientes en los estados de Connecticut y New Jersey, además de las entidades federales, para auscultar la posibilidad de localizarlo; y de localizarlo hacer las gestiones para citarlo.

Además, no puedo avalar el hecho de que no se hayan hecho gestiones en un tiempo razonable. Como bien se ha reconocido en varios de los foros apelativos federales, la buena fe exige que se hagan las gestiones en un tiempo adecuado. Adviértase que de los testimonios presentados surge que el Estado no hizo diligencias en más de seis meses. Incluso, el tío del testigo señaló que había pasado de un año a un año y medio desde la última vez que el agente Montañez lo visitó. No deberíamos avalar tal práctica.

Por ende, resulta imperativo razonar que el Tribunal de Primera Instancia abusó de su discreción, ya que debió hacer una determinación cautelosa de todos los hechos

presentados. A mi juicio, el foro primario erró al no tomar en consideración el hecho material importante de la posibilidad de que el testigo estuviera en Connecticut o New Jersey, a su vez que no se habían hecho gestiones en un tiempo razonable. De esta forma, falló en auscultar si se realizaron todas las medidas razonablemente posibles antes de declarar al testigo como uno no disponible. Al contrario, sin justificación ni fundamento alguno, concluyó que serían inútiles y fútiles gestiones adicionales. A su vez, incidió al determinar que el testigo era uno no disponible dado que la ausencia no era atribuible al Estado y que su traslado estuvo fuera de su alcance. Estos criterios por sí solos, según discutido, no son los requeridos por la jurisprudencia aplicable.

Nótese, además, que en este caso el señor Caraballo era el único testigo que vio los hechos, por lo que su importancia para la prueba del Ministerio Público es incuestionable. Esto es de mucha importancia para requerir al Estado una diligencia mayor en la búsqueda del testigo. A su vez, es un elemento que debieron tomar en cuenta los foros recurridos para determinar la adecuacidad de las gestiones realizadas. Al no hacerlo, sostengo que erraron en su evaluación.

Como he mencionado, la determinación de si un testigo está indisponible es una decisión que se debe realizar caso a caso y que los tribunales apelativos debemos revisar conforme el estándar de abuso de discreción. Como el

requisito establecido jurisprudencialmente es uno de razonabilidad y diligencia conforme a la buena fe, no se debe aplicar una norma mecánica ni automática. Sin embargo, acogiendo la jurisprudencia discutida, este Tribunal debió reconocer que cuando se tenga información de posibles estados en específicos en los cuales el testigo se haya trasladado, el simple hecho de no estar en Puerto Rico no es suficiente para establecer la indisponibilidad. Máxime ante los avances tecnológicos y la cooperación mutua en la lucha contra el crimen entre las diversas jurisdicciones de los Estados Unidos.

En resumen, la mera ausencia del testigo en nuestra jurisdicción no debe justificar, por sí sólo, el uso en el juicio del testimonio en la vista preliminar. Aun si está fuera de la jurisdicción, se deben requerir esfuerzos diligentes para procurar la asistencia del testigo. Así pues, se requiere que se hagan diligencias razonables y de buena fe conducentes a poder encontrarlo y compelerlo a comparecer al juicio. La excepción debe ser cuando no se tenga conocimiento alguno del paradero y no pueda ser razonablemente descubierta, es decir, cuando las gestiones sean fútiles. Para ello, se debe demostrar que se hizo una búsqueda honesta y diligente, y que la falta de conocimiento no es atribuible a la falta de esfuerzo en descubrirlo. A su vez, sostengo que las diligencias a

realizar deberán efectuarse en un tiempo razonable, que se determinará caso a caso.[21]

En momentos de tantos adelantos tecnológicos se hace meritorio que el Ministerio Público realice actos razonables y afirmativos para tratar de localizar a los testigos y citarlos correspondientemente. Por eso, entiendo que cuando se tiene información de la posible mudanza de un testigo a potenciales estados de los Estados Unidos, es sumamente razonable exigir que se hagan actos afirmativos para procurar localizarlo y eventualmente citarlo o compelerlo a comparecer. Ello, conforme con los reiterados acuerdos colaborativos entre los estados y las entidades federales reconocidos desde Barber v. Page, supra.

Por consiguiente, cuando se pretenda establecer que un testigo no está disponible, los foros de instancia deben ejercer su función con suma cautela, y asegurarse que se hicieron esfuerzos razonables y de buena fe. Al contrario, no deben permitir que se pruebe la indisponibilidad con gestiones superficiales y proforma.

Recuérdese que en los casos criminales, cuando el Ministerio Público pretenda presentar un testimonio anterior, probar la indisponibilidad del testigo es un

---

[21]A modo de ejemplo y sin que signifique una lista taxativa de las posibles diligencias, en el caso ante nos, lo que procedía era que se hicieran gestiones coetáneas, con el uso de los recursos tecnológicos disponibles y con las entidades gubernamentales correspondientes en los estados de Connecticut y New Jersey, además de las entidades federales, para auscultar la posibilidad de localizarlo; y de localizarlo hacer las gestiones para citarlo.

requisito constitucional del derecho a la confrontación que no puede ser tomado livianamente. Así pues, no me parece acertado permitir que en la actualidad, con los avances tecnológicos que existen, y los acuerdos colaborativos entre los estados y el gobierno federal, se tome tan livianamente las diligencias que deben realizarse para procurar la comparecencia del testigo. Más aún, cuando existen mecanismos como la Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings.[22] De esa forma, tan pronto es localizado un testigo con la ayuda de entidades gubernamentales, se puede utilizar ese mecanismo para obligarlo a comparecer como testigo en el juicio.

A esos efectos, hubiese expedido el recurso de certiorari ante nuestra consideración y revocado a los foros inferiores porque incidieron al realizar su evaluación de los hechos presentados y de esta forma declarar al señor Caraballo como uno no disponible. Conforme a la discreción que tenemos para otorgarle a nuestras decisiones judiciales efecto prospectivo,[23] hubiese devuelto el caso al Tribunal de Primera Instancia

---

[22]Véase, por ejemplo, Mechler v. Procunier, supra, en el cual se utilizó el Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Resáltese que los estados de New Jersey y Connecticut cuentan con disposiciones a esos efectos. N.J. Stat. Ann. sec. 2A:81-19 (West); Conn. Gen. Stat. Ann. sec. 54-82i (West). Similar disposición tenemos en Puerto Rico. 34 LPRA sec. 1471.

[23]Véase, Datiz v. Hospital Episcopal, 163 DPR 10, 17 (2004).

y concedido un tiempo razonable al Ministerio Público para que realizara las gestiones conducentes a procurar la comparecencia del testigo. Ello, ante la consideración de que nunca nos habíamos expresado sobre las diligencias requeridas para demostrar la indisponibilidad de un testigo en los supuestos cuando la persona se trasladó a otro estado de los Estados Unidos. Más aún, tampoco nos hemos expresado si era necesario que se hicieran las diligencias en un tiempo razonable.

Como se puede apreciar, la no expedición del recurso de epígrafe premia la desidia del Estado de no cumplir cabalmente con sus obligaciones y exigencias constitucionales. Particularmente, cuando las gestiones realizadas para localizar un testigo de cargo en un proceso criminal se centran en lugares donde de antemano se sabe no será localizado. Tal actuación no puede ser catalogada de buena fe ni razonable y, como tal, vulnera el derecho constitucional a la confrontación. Es por ello que disiento.


                                        Luis F. Estrella Martínez
                                             Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

     v.               CC-2018-0119      *Certiorari*

Wilfredo Ruiz

    Peticionario

Voto particular disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 6 de noviembre de 2019.

Disentimos enérgicamente del curso de acción seguido por una mayoría de este Tribunal en el presente caso, ello por entender que, en lo que respecta a la causa de epígrafe, el Ministerio Público no desplegó la diligencia requerida por la Regla 806 de las Reglas de Evidencia, 32 LPRA Ap. VI, para considerar a un testigo como no disponible.[24] **Testigo que, en el presente caso, fue el único que presenció los hechos por los cuales se le acusó al señor Wilfredo Ruiz.**

---

[24] En esencia, como excepción a la regla general sobre prueba de referencia, la Regla 806(a)(5) expresa que se considerará como no disponible un testigo que esté ausente de cierta vista y quien propone la declaración ha desplegado diligencia para conseguir su comparecencia mediante citación del tribunal. 32 LPRA Ap. VI, R. 806.

El testigo de cargo al cual hacemos referencia es el señor Ramón G. Caraballo Atanasio, quien testificó bajo juramento en la vista preliminar y estuvo sujeto a contrainterrogatorio. Durante dicha vista preliminar, se encontró causa probable para acusar al señor Wilfredo Ruiz por violar el Art. 93 del Código Penal, 33 LPRA sec. 5142, así como los Arts. 5.04 y 5.15 de la Ley de Armas de Puerto Rico, 25 LPRA secs. 458 y 458n.

Consecuentemente, debido a la importancia del testimonio del referido testigo, -- y máxime cuando se trata aquí de un caso donde de recaer sentencia en contra del imputado del delito éste podría pasar toda su vida privado de su libertad --, el Ministerio Público debió realizar gestiones adicionales para lograr su comparecencia. Cruzarse de brazos por seis (6) meses, antes del inicio del juicio en su fondo, sin realizar gestión alguna, para luego reclamar que el testigo no estaba disponible, no es una acción que podamos avalar. No al menos el juez que suscribe.

En ese sentido, era necesario que el Ministerio Público empleara mayor diligencia para tratar de dar con el mencionado testigo dentro del referido periodo de tiempo o, en la alternativa, acreditar que dichas gestiones se realizaron y no rindieron frutos. Nada de eso ocurrió aquí.

**Siendo ello así, somos del criterio que -- en lo que respecta al caso de marras -- hubo una violación crasa a la cláusula constitucional de confrontación que cobijaba al**

**acusado.**[25] Recordemos que, conforme dicha cláusula, el debido proceso de ley exige que todo acusado tenga derecho a carearse y contrainterrogar a los testigos adversos, así como a que se excluya prueba de referencia que se pretenda utilizar en su contra. Véase, *Pueblo v. Santos Santos,* 185 DPR 709 (2012), citando a L.E. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Colombia, Ed. Forum, 1992, Vol. II, pag. 569. Véase, además, *Pueblo v. Guerrido López*, 179 DPR 950, 958 (2010).

Sobre el particular, debemos señalar también que la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho a la vida y la libertad como un derecho fundamental y establece que ninguna persona será privada de su libertad o propiedad sin el **debido proceso de ley**. Art. II, Sec. 7, Const. E.L.A., LPRA, Tomo I, ed. 2016, pág. 301. Ciertamente, avalar actuaciones del Ministerio Público tales como las del caso de autos, no salvaguardan tan primordial disposición constitucional. Disposición que representa los imperativos de la justicia fundamental a los que tienen derecho los ciudadanos y ciudadanas ante una investigación y proceso criminal. Véase, *Pueblo v. Arzuaga,*

---

[25] En lo pertinente, la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico dispone que, en todos los procesos criminales, el acusado disfrutará del derecho a, entre otros, carearse con los testigos de cargo. Art. II, Sec. 11, CONST. ELA, LPRA, Tomo 1. De igual manera, la Enmienda Sexta de la Constitución de Estados Unidos establece que, en un proceso criminal, todo acusado disfrutará del derecho a confrontar a los testigos que se presenten en su contra. Emda. VI, CONST. EE.UU., LPRA, Tomo 1.

160 DPR 520 (2003), citando a Chiesa Aponte, *op. cit.*, pág. 23-24.

Es, pues, por todo lo anterior, que respetuosamente disentimos del curso de acción seguido por una mayoría de este Tribunal.


                                   Ángel Colón Pérez
                                   Juez Asociado